## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES KORNHARDT,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:13CV00214 (CAS)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## GOVERNMENT'S RESPONSE TO SHOW CAUSE ORDER

Petitioner James Kornhardt ("Petitioner") has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.   The Court directed the Government to show cause why the relief requested in Petitioner's motion should not be granted.   This response is in compliance with the Court's Order.

## I.
## FACTS[1]

Karen Coleman wanted to kill her husband, Danny Coleman.   She told her friend, Michelle Nolan, that she wanted to kill Danny.   Michelle had Karen talk to Larry Nolan, Michelle's husband.   Larry asked about the amount of life insurance Danny had and then agreed to have Danny killed in exchange for part of the life insurance proceeds.   Larry arranged for Karen to meet Petitioner James Kornhardt to discuss killing Danny.   Karen agreed to pay $15,000

---

[1]The statement of facts is adopted liberally, without the use of quotation marks, from the Eighth Circuit Court of Appeals opinion, *United States v. Mueller*, 661 F.3d 338 (8th Cir. 2011).

1

to Petitioner and an unspecified amount to Larry.  To help kill Danny, Petitioner enlisted his friend, Steven Mueller.

On October 22, 1992, Petitioner, Mueller and another individual, "Dozer," beat Danny to death in another individual's house.  Danny's body was ultimately found in a vehicle that had been set on fire in an open field. A new box of matches was found near the truck. Fingerprints were found on the cellophane wrapper of the box, but at that time the police were unable to match the fingerprints to anyone.   The investigation into Danny's death eventually came to a standstill.

Then in 1999 an inmate, Michael Kempker, disclosed information about Danny's death to law enforcement.   Michael was Larry's friend when the two men were in prison together. Larry had asked Michael to procure a silencer to be used in Danny's murder. The silencer had been given by Michael's father to Petitioner in exchange for $1,000.

Based on Michael's information, law enforcement questioned Petitioner and eventually matched his fingerprint to one that had been found on the box of matches. Petitioner and Karen were then indicted for Danny's murder. While Petitioner was in jail, he called Mueller on the phone and directed him to remove immediately several items that were hidden in a fireplace and in a detached garage, which were located on Petitioner Kornhardt's property. This phone conversation was recorded and eventually overheard by the authorities.

After listening to the recording, an agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") questioned Mueller about the items he removed from the house and garage and about Danny's death. Mueller admitted to the agent that he had disposed of a silencer, gun and ammunition. Mueller told the agent various stories about what had happened on the day that Danny was killed, including one account of the murder where three men beat

Danny with bats and fighting sticks and then shot him three times. Mueller showed the agent where Danny was killed and walked him through the crime scene while explaining what happened. He admitted to the agent that he shot Danny and had received $1,000 to $1,200 for his role in the murder. He ultimately testified to a grand jury that he had removed the silencer and gun from the house and garage after the phone conversation with Petitioner.

A second superseding indictment charged Karen, Petitioner and Mueller with murder-for-hire and conspiracy to commit murder-for-hire. Additionally, Petitioner was charged with obstruction of justice based on his phone conversation with Mueller. Karen pleaded guilty to murder-for-hire and conspiracy to commit murder-for-hire. Petitioner and Mueller went to trial.

During the trial, Karen testified that she received checks totaling $150,000 through the mail from various insurance companies, which were subsequently deposited into her bank account. The first insurance payment was received on October 6, 1993, and the final payment was received on July 15, 1997. She also testified that she paid $15,000 of the insurance proceeds to Petitioner in October of 1994 for his role in killing Danny. After a six-day jury trial, Petitioner and Mueller were convicted of murder-for-hire and conspiracy to commit murder-for-hire. The jury also found Petitioner guilty on the obstruction of justice charge.

## II.
## PROCEDURAL HISTORY

On December 11, 2008, a federal grand jury sitting in St. Louis returned an indictment against Karen Coleman and Petitioner Kornhardt charging them with conspiracy to commit murder-for-hire (Count I) and murder-for-hire (Count II), both in violation of Title 18 U.S.C. § 1958.  Attorneys Scott Rosenblum and Adam Fein entered their appearance on behalf of

Petitioner. (District Court Docket ("DCD") 9, 10)  The Federal Public Defenders Office was appointed to represent Karen Coleman. (DCD 12, 32)

On April 30, 2009, the grand jury returned a superseding indictment against Karen Coleman, Petitioner and Mueller. (DCD 64)  A second superseding indictment was returned by the grand jury on June 25, 2009. (DCD 105) In Count I, Karen Coleman, Petitioner and Mueller were charged with conspiracy to commit murder-for-hire. In Count II, all three were charged with murder-for-hire. Count III charged Petitioner with Obstruction of Justice, in violation of Title 18 U.S.C. § 1512(b)(2)(B). Count IV charged Petitioner with Mail Fraud in violation of Title 18 U.S.C. §§ 1341 and 1342. Finally, Count V asserted forfeiture allegations against Petitioner. Attorney Steven Stenger was appointed by the Court to represent Mueller.

As the case progressed, Karen Coleman entered a plea of guilty on June 3, 2010. (DCD 255)  Petitioner and Mueller elected to proceed to trial, which began on June 7, 2010. (DCD 276) On June 14, 2010, the jury returned its verdict, finding Petitioner guilty on Counts I, II and III.[2] (DCD 281)  Petitioner appeared before this Court for sentencing on September 23, 2010. The Court sentenced him to a term of imprisonment of Life on Counts I and II, and a term of 240 months on Count III, all terms to be served concurrently. (DCD 325)

Petitioner appealed his conviction and sentence to the Eighth Circuit Court of Appeals. On November 11, 2011, the Eighth Circuit affirmed the judgment of this Court, with the appellate court's mandate issuing on December 22, 2011. *United States v. Kornhardt*, 661 F.3d 338 (8th Cir. 2011). (DCD 369, 371)  On January 31, 2013, Petitioner filed the instant motion for

---

2 The Government dismissed Count V prior to trial and Count IV was severed from Counts I, II and III pursuant to pre-trial motions.

post-conviction relief pursuant to 28 U.S.C. § 2255.   The motion was timely filed.   However, for

the reasons stated below, the motion should be denied.

### III.
### MOVANT'S CLAIMS

In his § 2255 motion, Petitioner raises the following claims for post-conviction relief:

(1)     Petitioner was denied due process of law by being convicted of a non-existent
offense;

(2)     Petitioner was denied a fair trial and due process of the law when prosecutors failed
to place a key witness on the stand;

(3)     Petitioner was denied his sixth amendment right to the effective assistance of trial
counsel;

(4)     Petitioner was denied his sixth amendment right to the effective assistance of
appellate counsel;

(5)     Petitioner was denied due process of law when he was convicted of an offense not
supported by the evidence; and

(6)     Petitioner was denied a fundamentally fair trial when the court allowed jurors to be
exposed to unsworn extra-judicial statements made by co-defendant Steve Mueller
when law enforcement authorities had rejected him as a witness for the
government.

For the reasons set forth below, each of Movant's claims fails. Therefore, this Court should

deny Movant's motion for post-conviction relief.

5

## IV.
## ANALYSIS

**A.      Non-Existent Offense**

For his first ground for post-conviction relief, Petitioner asserts that he was denied due process of law by being convicted of a "non-existent" offense. A review of the ten pages of Petitioner's motion dedicated to this claim suggests, however, that Petitioner recognizes he was convicted under 18 U.S.C. § 1958 (obviously a recognized offense), but he believes the circumstances of his case are such that he should not have been convicted of that offense. Petitioner argues that the Government could not come up with any other charge, so it "was forced to resort to 'mail fraud' as a basis for establishing federal jurisdiction…."   Petitioner's § 2255 Motion, p. 5-5A.   Petitioner contends, however, that the mail fraud charge fails for several reasons.

First, Petitioner argues that the Government failed to establish any connection between Danny Coleman's murder and any financial incentive.   Karen Coleman testified the sole reason she wanted her husband dead was so she could be "free" of their marriage.   Rather than being a financial bonanza to Karen Coleman, the death of Danny Coleman was financially disastrous. Thus, because the Government was unable to establish a financial motive for the murder, "scienter" is absent from the equation since it was not done for the purposes of committing mail fraud.   Petition at p. 5A-5C, 5E.

Second, Petitioner argues that he was improperly convicted of this crime because a "sensible reading of [18 U.S.C. § 1958] leads to a conclusion that the 'mail fraud' must precede the murder."   Petition, p. 5C.   According to Petitioner, it is "patent that the death must result from the

6

fraudulent use of the mail, and not the reverse…. It is the latter that occurred in this homicide, and not the former.   Therefore, no violation was chargeable."   *Id*.   Petitioner argues that the use of interstate facilities, including the mail, must occur *prior* to the actual murder.   *Id*. at 5D.

Third, Petitioner asserts that the prosecutors presented no proof that any of the life insurance proceeds were used to pay Petitioner to kill Danny Coleman.   Karen Coleman received the life insurance proceeds about one year after Danny Coleman's death.   She did not pay Petitioner until a year after that.   Karen Coleman testified that she spent the life insurance proceeds on numerous things.   As a result, "if she did pay a hit-man $15,000.00, then it could not be traced to Danny Coleman's life insurance policy."   Petition, p. 5G-5H.

### 1.     Procedural Default

Petitioner's claim first fails because Petitioner did not present this issue to the trial court or raise this issue on direct appeal.   If a claim could have been raised on direct appeal but was not, it cannot be raised in a § 2255 motion.   "[N]ormally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief." *Poor Thunder v. United States*, 810 F.2d 817, 823 (8th Cir.1987) (internal citation omitted).

A procedural default can be excused in two circumstances.   First, a petitioner can overcome the procedural default if petitioner can identify (1) a "cause" that excuses the default, and "actual prejudice" resulting from the errors of which he complains. *See Mathews v. United States,* 114 F.3d 112, 113 (8th Cir.1997)*; Ramey v. United States,* 8 F.3d 1313, 1314 (8th Cir.1993).   Second, a petitioner can overcome the default if the petitioner can demonstrate actual innocence. *Johnson v. United States,* 278 F.3d 839, 844 (8th Cir.2002) ("In order to obtain collateral review of a procedurally defaulted issue, a § 2255 movant must show either cause and

actual prejudice, or that he is actually innocent.").   Petitioner fails to identify a reason why this claim was not raised in his criminal proceedings and does not assert actual innocence .   *See* Petitioner's motion, p. 5-6, Question 7.   Thus, his first claim must be denied.

### 2.     Merits

To the extent the Court elects to consider Petitioner's first claim on the merits despite the procedural bar, Petitioner's claim still fails.

First, Petitioner misunderstands the elements of 18 U.S.C. § 1528. Both Counts I and Count II were based on that statute.     The statutory elements of the Count 1 conspiracy are: (1) an agreement (2) involving the use of the mail or any facility of interstate or foreign commerce (3) with the intent that a murder be committed (4) with the murder being consideration for the receipt of or the promise of something of pecuniary value.   18 U.S.C. § 1958(a). The statutory elements of Count II are essentially the same: (1) a person used the mail or any facility of interstate or foreign commerce (2) with the intent that a murder be committed (3) with the murder being consideration for the receipt of promise of something of pecuniary value. *Id.*   Otherwise stated, to convict a defendant under § 1958, the Government must show that one party agreed to commit a murder in exchange for another party's provision or future promise of payment of anything of pecuniary value and that the conspiracy utilized a facility in interstate commerce. *United States v. Hyles*, 521 F.3d 946, 954-56 (8th Cir. 2008).   Petitioner claims that, because Karen Coleman was having her husband killed in order to be free, as opposed to obtaining financial gain, there can be no crime. As an initial point, there is no requirement that the sole purpose of the murder be to obtain financial gain, only that pecuniary gain be given in consideration for the murder. Further,

8

Petitioner disregards the financial gain by Petitioner, Nolan and Kempker which they received in consideration for committing the murder.

Second, Petitioner's argument that a "sensible reading of [18 U.S.C. § 1958] leads to a conclusion that the 'mail fraud' must precede the murder" is incorrect.   Mailings of insurance proceeds made in the furtherance of the murder-for-hire scheme occurred both before and after the murder.   Prior to the murder, Karen Coleman mailed letters to Larry Nolan in which she discussed the scheme.   In addition, Karen Coleman testified that it was understood the proceeds from the life insurance policies would be used to pay Nolan and others for their part in killing Danny Coleman.   Obviously, Karen Coleman could not apply for those life insurance proceeds until *after* the death of Danny Coleman.   Those payouts of insurance proceeds continued until 1997.   Thus, Petitioner's belief that the use of interstate facilities must occur prior to the murder is incorrect. *See United States v. Basile*, 109 F.3d 1304 (8th Cir. 1997).

Third, Petitioner's argument that there was no proof that any of the life insurance proceeds were used to pay Petitioner to kill Danny Coleman is wrong. Karen Coleman specifically testified that, after she received the life insurance proceeds, she slowly withdrew the money from her account so that it would not be noticeable and, after she had collected enough, she made payment to Kornhardt.  Tr. Trans. Vol. III-B, p. 18-21.

Petitioner's first ground for post-conviction relief is entirely without merit.   As such, the Court should deny this claim.

**B.     Key Witness**

Petitioner asserts that he is entitled to post-conviction relief because he was denied a fair trial and due process of the law when the Government failed to call Michelle Nolan as a witness

9

during the trial.   Petitioner contends that Michelle Nolan was a key player in the scheme to murder Karen Coleman's husband:

> Other than Steve Mueller's hearsay, the only person in possession of knowledge as to whom [Michelle Nolan] delivered the key to Joe Briskey's house, was Michelle Nolan.  This missing witness was critical to not only solving the mystery as to the missing key, but, in addition, Michele Nolan possessed crucial information pertaining to other matters which went to the elements of the charged offense.

Petitioner argues that Michelle Nolan was given immunity.   "Consequently, no rational justification could have existed for not placing her testimony before the jury."   *Id.* at 6C - 6D. Petitioner also argues that the Government's failure to call Michelle Nolan entitled Petitioner to a jury instruction authorizing the jurors to draw an unfavorable inference from such failure, that is, that the Government's failure to call Michelle Nolan constituted an admission that her testimony would have been unfavorable to the Government's theory of how the murder occurred.   *Id.* at 6E.

Thus, it appears Petitioner is contending that the Government engaged in prosecutorial misconduct when it failed to call Michelle Nolan as a witness.   Further, as a result of the Government's putative misconduct, Petitioner was entitled to an "unfavorable inference" instruction.

### 1.    Procedural Default

Petitioner failed to raise this issue on appeal.   As stated earlier, if a claim could have been raised on direct appeal but was not, it cannot be raised in a § 2255 motion.   A procedural default can be excused, first, if petitioner can identify (1) a "cause" that excuses the default, and "actual prejudice" resulting from the errors of which he complains. *See Mathews v. United States,* 114

10

F.3d 112, 113 (8th Cir.1997).   Second, a petitioner can overcome the default if the petitioner can demonstrate actual innocence. *Johnson v. United States,* 278 F.3d 839, 844 (8th Cir.2002).

Here, Petitioner argues that the reason he did not raise this issue in his direct appeal is "due to the ineffective assistance of counsel, plus, the petitioner is "actually innocent" of the crime. See Petitioner's § 2255 motion, p. 7.   Certainly, the "cause and prejudice " that must be shown to consider a procedurally defaulted claim may include ineffective assistance of counsel. *See Becht v. United States,* 403 F.3d 541, 545 (8th Cir.2005).   However, although ineffective assistance of counsel can constitute cause to excuse a default, a conclusory assertion of some unspecified inadequacy of a constitutional kind does not meet the cause requirement.   *See Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 691-92 (1984)) (Standard is whether counsel's error [i.e., default] was so egregious as to render his assistance below that guaranteed by the Sixth Amendment).   Petitioner has made a conclusory allegation that his counsel was ineffective for failing to raise this issue on direct appeal.   Such a claim is insufficient to overcome the procedural default and, therefore, Petitioner's claim is defaulted.

Although Petitioner alternatively claims "actual innocence" to excuse his procedural default, actual innocence is a strict standard that generally cannot be met "where the evidence is sufficient to support a conviction on the charged offense." *Id.* (internal quotation marks and citation omitted).   As a jury found sufficient evidence beyond a reasonable doubt to convict Petitioner, he cannot avail himself of the actual innocence exception.

### 2.    Merits

Should the Court elect to consider Petitioner's claim despite the procedural default, Petitioner's second claim for post-conviction relief fails on the merits as well and, therefore,

should be denied.   "As a general rule, 'prosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render [petitioner's] conviction a denial of due process.'" *Louisell v. Dir. Of Iowa Dept. of Corr.*, 178 F.3d 1019, 1023 (8th Cir. 1999) (quoting *Roberts v. Bowersox*, 137 F.3d 1062, 1066 (8th Cir. 1998)).   To prevail on a claim of prosecutorial misconduct, a party must satisfy both prongs of a two-part test. *Graves v. Ault*, 614 F.3d 501, 507 (8th Cir. 2010). First, the party must show that the prosecutor's conduct was improper. *Id.* Second, the party must show that improper conduct caused the party prejudice by depriving him of a fair trial. *Id.* A party has been deprived of a fair trial only where the improper conduct could reasonably have affected the jury's verdict. *Id. See also Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002) (To receive habeas relief, a petitioner " 'must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different.'").   When determining whether a party has been denied a fair trial, a court considers the cumulative effect of the misconduct, the strength of the properly admitted evidence of the party's guilt, and any curative actions taken by the district court. *Graves*, 614 F.3d at 507–08.

Here, Petitioner's claim fails because Petitioner cannot show that the prosecutor's behavior was improper.   There is absolutely no requirement, constitutional or otherwise, which compels a prosecutor to call a witness in its case-in-chief.   The Government elected not to call Michelle Nolan as a witness.   She was available to Petitioner, should Petitioner have wanted to call her. The Government did nothing to deny that opportunity to Petitioner.   As the Government engaged in no misconduct, Petitioner's claim fails.

## C.    Ineffective Assistance of Trial Counsel

Petitioner raises thirty-five different grounds upon which he claims that he received ineffective assistance of trial counsel.  Each is without merit.  Therefore, his third claim for post-conviction relief should be denied.

A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).  To succeed on an ineffective assistance of counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced the movant's case.   *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo*, 223 F.3d at 925.

An attorney's performance is deficient if it falls "below an objective standard of reasonableness."   *Strickland*, at 687-88; *Sera*, 267 F.3d at 874.   There are two substantial impediments to making such a showing.  First, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (*quoting   Strickland*, 466 U.S. at 689); *Sera*, 267 F.3d at 874. *See also Ford v. Lockhart*, 905 F.2d 458, 462 (8th Cir. 1990) (evaluation of a claim of ineffective assistance of counsel is highly deferential with a strong presumption that counsel acted competently). Second, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690).  When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time."   *Strickland*, 466 U.S. at 689.

13

In addition to proving a deficiency in counsel's performance, the movant must also prove that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland,* 466 U.S. at 692.   The burden is on the movant to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694; *DeRoo*, 223 F.3d at 925.

A court need not even determine whether a movant meets the "performance" prong of the *Strickland* test.   "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Young v. Bowersox,* 161 F.3d 1159, 1160 (8th Cir. 1998) (quoting *Strickland*, 466 U.S. at 697), *cert. denied*, 528 U.S. 880 (1998). *See also Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir.) (if the petitioner makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

### 1.    Failure to Object to Hearsay Testimony

Petitioner claims that his counsel was ineffective for failing to object "to the numerous instances of hearsay testimony which came in, during the jury trial, and relied upon to connect him to the murder plot, and to establish federal jurisdiction." Petitioner's § 2255 motion, p. 8.

Petitioner does not establish at what points in the trial his counsel failed to object to the hearsay testimony. The Government assumes that Petitioner is complaining about the testimony of

14

Michael Kempker and Karen Coleman, both of whom testified as to various things Larry Nolan told them.[3]

Petitioner's claim fails first because counsel did object to this testimony. The week prior to trial, defense counsel filed a Motion in Limine to Exclude Hearsay Statements. [DCD 236]   In that motion, defense counsel specifically moved to exclude "[a]ny and all statements by Larry Nolan, a deceased former inmate of the Missouri Department of Corrections, including any statements to any individuals at or around the time of his death purporting to confess his involvement in the murder of Danny Coleman." *Id*. at p. 1. In that same motion, counsel moved to exclude any and all statements of "any witness who will not be testifying and subject to cross-examination" and any and all statements of "Steve Mueller implicating Defendant Kornhardt in any criminal activity."   *Id*. at 1-2.

In his Memorandum in Support, Petitioner's counsel argued:

> Larry Nolan's statements pose a particular difficulty because he is alleged to have made several classes of potential hearsay statements during this investigation: 1) confessions allegedly made because he wanted to clear his conscience about the murder and because he was angry that he had not been paid for his involvement in the conspiracy; 2) gratuitous statements of involvement in the conspiracy, not in furtherance of the conspiracy; 3) co-conspirator's statements; and 4) statements that are part of the alleged offense itself.

*Id*. at p. 2.   The Court held a pre-trial hearing on June 3, 2010, and discussed the motion. DCD 272, Pretrial Tr. p. 31-35.   The Government opposed Petitioner' motion. DCD 254

---

3 For example, Michael Kempker testified that Larry Nolan told him to reach out to authorities and tell them that Karen Coleman and Petitioner were involved in the murder because he was bitter about not having been paid for arranging the murder.   Tr. Trans. Vol. III-A, p. 45, 47. Karen Coleman also testified to various statements made by Larry Nolan in which Larry Nolan implicated Petitioner. *See e.g.* Tr. Trans. Vol. III-B, p. 10-19.

On the first day of trial, before voir dire, the Court heard additional argument on Petitioner's motion to exclude this hearsay testimony and elected to permit the testimony at trial, admissible as co-conspirators' statements.  Tr. Trans. Vol. 1, p. 3-7.  Trial commenced and Petitioner's counsel continued to object to the "hearsay" testimony.  For example, when the Government called Michael Kempker, counsel approached the bench and stated, "I just wanted to renew – it's my understanding the government is going to call Michael Kempker at this time. And to that extent I would like to renew our pretrial motions with respect to portions of his testimony, so I don't have to interrupt Mr. Dittmeier's direct."  Tr. Trans. Vol. II, p. 183. The Court overruled the objection.  *Id.*

In light of the fact that counsel did object to the testimony, Petitioner cannot establish his counsel's performance was constitutionally infirm.  Moreover, because counsel engaged in the very conduct Petitioner desired, Petitioner cannot establish prejudice.

Even assuming counsel failed to make the appropriate objections, Petitioner would be unable to establish prejudice as counsel would not have prevailed on such an objection.   Under Federal Rule of Evidence 801, "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay.   Fed.R.Evid. 801(d)(2)(E); *United States v. Spotted Elk*, 548 F.3d 641, 660-661 (8th Cir. 2008).   Moreover, a district court's discretion in admission of these statements "is particularly broad in a conspiracy trial."   *United States v. McCay*, 431 F.3d 1085, 1093 (8th Cir. 2006).   Petitioner's claim fails.

### 2.        Failure to Protest Absence of Corroborative Proof

Petitioner asserts that his attorneys were ineffective because they "did not protest the absence of clearly available corroborative proof, if it existed, which should have been presented by

the prosecutors to support the testimony of government witnesses pertaining to telephone calls having been actually made; to prison visits; to bank account withdrawals; and to correspondence." Petitioner's § 2255 Motion, p. 8.

Petitioner is incorrect that his counsel failed to "protest" the lack of corroborating evidence.  While cross-examining Michael Kempker, counsel established that there is a record kept by the prisons of the people that visit the inmates.  Tr. Trans. Vol. III-A, p. 7.  Counsel established again with Kempker at a later time that, with respect to the meetings to which he testified, there would have been jail records documenting all these meetings.  *Id.* at 40.  However, as discussed below, the Government was unable to locate any of these documents specific to these particular meetings.

When counsel cross-examined Karen Coleman, he established that, although she claimed to have mailed Larry Nolan numerous letters, she does not have one letter to corroborate her testimony.  Tr. Trans. Vol. III-B, p. 61.  In addition, although Karen Coleman testified she had called Petitioner several times from her cell "bag" phone, she did not have one document from the phone company to show these phones calls were actually made.  *Id.* at 62.  Karen Coleman testified that she wrote Petitioner's various phone numbers down in the back of one of her check registers.  Counsel established that she kept every one of her check registers *except* for the one which would have corroborated the various phone numbers of Petitioner's.  *Id.* at 88.

During counsel's cross-examination of Agent Tad Heitzler,[4] counsel established, among other things, that: (1) Heitzler had no actual letters between Karen Coleman and Larry Nolan

---

4  The trial transcript refers to the Agent as Tad Heistzler.   This is an incorrect spelling of his name.

17

regarding her agreement to have Danny Coleman killed (Tr. Tran. Vol. IV, p. 183); (2) Heitzler was not able to find any cell phone records that corroborated Karen Coleman's contention that she called Petitioner Kornhardt (*Id*. at 184); (3) Karen Coleman was never able to locate the purported audiotape of her meeting with Petitioner (*Id*. at 184-85); and (4) Heitzler had no bank records of Petitioner's to show he had deposited any large sums of money into his bank accounts (*Id*. at 186).

In his closing argument, defense counsel continued to hammer the point that there was no corroborating proof.   He stated that, although Kempker talked about visitation records, there were no visitation records corroborating the meetings about which Kempker had testified. Tr. Trans. Vol. VI, p. 81-82.   With respect to Karen Coleman's testimony, he argued:

> And nothing interestingly enough can be corroborated, not one word of what she said.  She talks about what?  She talks about all these letters.  Letters on top of letters on top of letters talking about the doctor.  Conveniently burned.  She talks about, well, I jotted down the numbers on the back of potentially a check register.  Not there.  She talked about this story where she and Michelle Nolan heard that a tape recording of her implicating her was buried over on Tennessee.  Led the detectives to it.  Not there.  Talked about a cell phone.  Not there.  Visiting records.  Nothing is corroborated.

*Id*. at 92.

It is clear from the record that defense counsel repeatedly "protested" the lack of corroborating evidence during Petitioner's trial.   As counsel engaged in the very conduct Petitioner wished him to, counsel cannot be found to be ineffective.   In addition, Petitioner cannot establish prejudice.   That is, he cannot establish that the outcome of his trial proceedings would have been different had counsel engaged in this conduct, because counsel *did* perform as Petitioner wanted.   Petitioner's claim fails.

18

### 3.   Failure to Provide Alibi Defense

Petitioner next claims that his counsel was ineffective because they "did not conduct themselves in accordance with the norms of their profession when no effort was made to present an alibi defense for James Kornhardt." Petitioner's § 2255 motion, p. 8.

In order for Petitioner to establish the "performance" prong of the *Strickland* analysis, Petitioner must establish that he had an alibi and his counsel failed to pursue and present that alibi defense to the jury.  If, indeed, Petitioner had an alibi, it is hard to imagine that attorneys as experienced as Petitioner's would have failed to explore that with Petitioner. Regardless, Petitioner fails to inform this Court what his alibi was.   Thus, it is impossible to assess the validity of Petitioner's claim.   The burden is upon Petitioner in a § 2255 proceeding to establish that he is entitled to relief. *Strickland*, 466 U.S. at 687-88 (the burden is on the prisoner to prove, by a preponderance of the evidence, that counsel's performance was unreasonable).   Petitioner fails to carry that burden on this issue.   Mere conclusory allegations are insufficient to support a claim for ineffective assistance of counsel.  *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance); *Estes v. United States*, 883 F.2d 645, 647 (8th Cir. 1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence).

Assuming a "performance" violation, in order for Petitioner to establish "prejudice" in the context of an alibi defense, it is his burden to prove affirmatively that "there is a reasonable probability that, had his trial counsel pursued the alibi defense, he would have been acquitted." *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992).  *See also Williams v. United States*,

452 F.3d 1009 (8th Cir. 2006).   Again, as Petitioner has failed to reveal what his purported alibi is, Petitioner simply cannot meet this burden.

As Petitioner has failed to meet either prong of the *Strickland* analysis, his claim for relief necessarily fails.

### 4.      Good Character and Reputation

Next, Petitioner argues that counsel was ineffective for failing "to introduce evidence of the petitioner's good character and reputation in the community, which created reasonable doubt." Petitioner's § 2255 motion, p. 8-8A.   Petitioner does not describe for the Court what evidence there is of his good character and reputation in the community.   Without knowing what the evidence is, it is impossible to assess the validity of Petitioner's claim and determine whether Petitioner's counsel provided constitutionally infirm representation by failing to introduce such evidence.   Assuming such evidence existed and counsel elected not to present it, counsel's decision whether to call a witness at trial is normally a trial strategy decision that is presumed reasonable and cannot be challenged.   *United States v. Rice*, 449 F.3d 887, 898 (8th Cir. 2006); *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005).

Regardless, even if such evidence existed and counsel should have introduced it, Petitioner cannot establish prejudice.   As discussed below in the next section, one of the reasons Petitioner did not testify at his trial was because of his concern and counsel's concern that the Government would be able to cross-examine him with the possibility of some of his other misconduct.   Had evidence of Petitioner's good character been introduced by his counsel, the Government would have been free to challenge that evidence with specific evidence of conduct. Fed.R.Evid. 404(a); *United States v. Grady*, 665 F.2d 831, 834-35 (8th Cir. 1981). Thus, Petitioner is unable to show

20

that the outcome of his trial proceedings would have been different had only counsel introduced this unknown evidence to the jury.  *See Girtman v. Lockhart*, 942 F.2d 468, 472 (8th Cir. 1991); *United States v. Pungitore*, 15 F. Supp. 2d 705, 729 (E.D.Pa. 1998) (in view of the evidence against the defendant, trial counsel's failure to call character witnesses would have scarcely made a difference); *Cohen v. United States*, 996 F. Supp. 110, 114 (D. Mass. 1998) (trial counsel's failure to interview potential character witnesses was not ineffective assistance where counsel was faced with an abundance of physical and testimonial evidence that clearly implicated the defendant in the charged offense.").

  **5.**  **Failure to Prepare to Testify**

  Petitioner purportedly received ineffective assistance of trial counsel because his counsel did not prepare him to testify in his own behalf.   Petitioner § 2255 Motion, p. 8A.   Petitioner did not testify at his trial.   Therefore, it is unclear how counsel's performance was constitutionally infirm for failing to prepare him to testify.   Moreover, for the same reason, Petitioner cannot establish prejudice.

  During the trial, Petitioner's counsel approached the Court and asked to make a record regarding Petitioner's decision not to testify.   Mr. Rosenblum stated:

> We are now in our case and this case has been going on for quite a while.  During the course of that time I brought up the subject of whether or not Mr. Kornhardt wants to testify when he has an opportunity in this case.  I've explained to Mr. Kornhardt … that it's absolutely his decision.  And the one thing he has an absolute right to is to stand trial, and in the event he elects to go to trial, he has an absolute right to testify and nobody, including me, can prevent that.
>
> I have discussed with him what my recommendations are and my recommendation in this case, given that I think it would present the opportunity for the Government potentially to call rebuttal

> witnesses, potentially to cross-examine him with other tapes that they have access to with respect to phone calls made from jail. There's also the possibility that other misconduct on behalf of Mr. Kornhardt could be raised if he would elect to testify.  And given all those considerations, it is my recommendation and merely a recommendation that he elects to stand on his Fifth Amendment rights and not to testify.

Tr. Vol. V, p. 65-66.   Petitioner then informed the Court that he had made his decision and he did not want to testify. *Id*. at 66.

Assuming Petitioner is arguing that he would have testified at his trial had counsel properly prepared him, Petitioner's claim still fails.  Had this been the case, the time for Petitioner to express that concern to the Court would have been during the above colloquy.  But Petitioner raised no such concerns.

Even if this were the case, that Petitioner would have testified had he been properly prepared, Petitioner would be unable to meet the "prejudice" prong of the *Strickland* analysis. Petitioner would have to establish that the outcome of his trial would have been different had he testified.  To meet that burden, Petitioner must present to this Court what his testimony would have been.  Petitioner has failed to do this so it is impossible to assess the impact Petitioner's testimony may have had on the verdict. Moreover, Petitioner's proposed testimony would have to be balanced with the potential cross-examination by the Government.  As represented to the Court by defense counsel, the Government had ample material for cross-examination.   It was the potential for a vigorous cross-examination that led Petitioner to decline to exercise his right to testify.  In light of this, Petitioner simply cannot establish the "prejudice" prong sufficient to prevail on his ineffective assistance of counsel claim.

### 6.      Fingerprint Expert

According to Petitioner, his counsel was ineffective for failing to employ a fingerprint expert to counter the testimony offered by the government witness on fingerprints.   Petitioner's § 2255 motion, p. 8A.   Petitioner's claim fails.

First, Petitioner cannot establish that his counsel's performance was constitutionally infirm for failing to call his own expert at trial.   Prior to trial, defense counsel did employ a fingerprint expert to examine the fingerprint.   That expert was Donald Bryan who used to be the supervisor of the St. Louis County Police Department latent print unit.   Mr. Bryan actually trained Donna Knight.   Upon reviewing the fingerprint, Mr. Bryan confirmed that the print identified on the box of matches was, indeed, James Kornhardt's.   Obviously, it would have served no purpose to call an expert who only would have confirmed the Government's expert on one of the Government's strong pieces of evidence.

As the Court recalls, the fingerprint testimony was exceedingly strong.   Donna Knight had thirty years of latent print experience and had reviewed thousands of prints a year.   She testified that if one can make eight points of comparison between two prints, then one can conclude the two prints belong to the same person.   In this case, the fingerprint left on the matches had 18 points of comparison with Petitioner's thumbprint, more than double the amount necessary to establish a complete unity of relationship.   Tr. Trans. Vol. III-A, p. 81-86.

Having hired his own expert who confirmed the identity of the latent print, the most counsel could do was conduct an effective cross-examination.   Defense counsel did this by establishing that there were two prints on the matches, one of which was unidentifiable, and the

latent print examiner could not explain which print was placed there last or when either print was placed on the matches. *Id.* at 100-105.

Even assuming a "performance" violation, Petitioner cannot establish prejudice. Petitioner has not presented this Court with any evidence that another latent print examiner would have reached a different conclusion than Donna Knight.  Without such evidence, Petitioner simply cannot establish that the outcome of his criminal proceedings would have been different had only counsel called its own expert as a witness at trial.   Petitioner's claim should be denied.

### 7.    Life Insurance Proceeds

Counsel was purportedly ineffective for failing to "object to testimony concerning applications for life insurance proceeds, or, the procedures employed to collect on the same." Petitioner's § 2255 motion, p. 8A.   It is not clear what Petitioner's claim is.

A review of the trial transcript establishes that the only testimony regarding life insurance proceedings came during Karen Coleman's testimony.   There, she stated that she discussed life insurance with Larry Nolan when she was discussing having her husband killed.   Nolan wanted to know how much life insurance she had.   She testified the life insurance proceeds were to be used to pay Nolan's jail house lawyer and to pay Kornhardt $15,000.   Tr. Trans. Vol. III-B, p. 8-9. She testified further that after her husband was dead, she took steps to collect the insurance.  *Id.* at 16.   After her testimony, Government's Exhibit ST-2 was read to the jury. Tr. Trans. Vol. IV, p. 4-5.

The Government cannot determine how counsel could have been ineffective for failing to object to this testimony. Mere conclusory allegations are insufficient to support a claim for ineffective assistance of counsel.  *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001)

(conclusory allegations are insufficient to establish ineffective assistance); *Estes v. United States*, 883 F.2d 645, 647 (8th Cir. 1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence).   Moreover, even had counsel objected, certainly the outcome of Petitioner's trial proceedings would not have changed. Petitioner fails to meet his burden of establish both the "performance" prong and the "prejudice" prong of the *Strickland* analysis.   Thus, Petitioner's claim should be denied.

### 8.      Failure to Educate the Court

Petitioner claims that his counsel was ineffective for failing "to properly address and educate the court on the elements required for conviction under 18 USC § 1958, as it pertains to mail fraud in a murder-for-hire plot."   Petitioner's § 2255 motion, p. 8A.   Petitioner's claim is without merit.

Petitioner's claim first fails because he cannot establish that his counsel's performance in the regard was constitutionally infirm.   The record shows that Petitioner's counsel filed several motions to dismiss the indictment. [Docket No. 86, 95, 96]   In his first motion, counsel asserted that neither Count I nor II alleged an offense that involved the actual use of an interstate commerce facility. [DCD 86] In his second motion, counsel argued that the indictment violated the statute of limitations.[DCD 95]   In the third motion to dismiss, counsel argued that, as a logical matter, the offense charged in Count I of the Superseding Indictment could only have occurred prior to Danny Coleman's death on October 22, 1992.   At the time of Danny Coleman's death, however, and for the first four years of the conspiracy alleged in the indictment, 18 U.S.C. § 1958(a) did not prohibit conspiracy to commit murder for hire.   Therefore, Count I failed to state a claim. [DCD 96] Counsel subsequently filed a memorandum in support of his motions to dismiss.   [DCD 140]

Clearly, counsel had an understanding of 18 U.S.C. § 1958 and made arguments before both the Magistrate Court and this Court illustrating that knowledge.

Second, even assuming counsel should have done more (although Petitioner fails to state what that would be), Petitioner cannot establish prejudice.   The Court's rulings with respect to all issues surrounding 18 U.S.C. § 1958 were proper under the law.   The Eighth Circuit affirmed the Court's ruling with respect to the statute of limitations. *United States v. Mueller*, 661 F.3d at 345-47.   Petitioner simply cannot show how anything more counsel could have done would have changed this outcome.   His claim thus fails.

### 9.  Failure to Subpoena Bank Officials to Testify

Petitioner also claims counsel was ineffective because counsel "failed to subpoena bank officials to testify concerning Karen Coleman's checking account."   Petitioner's § 2255 Motion, p. 8A.   Petitioner does not explain in his motion what a bank official would testify to regarding Karen Coleman's checking account that would have been probative to this case.   Without knowing that information, the Government cannot address Petitioner's claim.   Such a conclusory allegation should be denied.   Mere conclusory allegations are insufficient to support a claim for ineffective assistance of counsel.  *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance); *Estes v. United States*, 883 F.2d 645, 647 (8th Cir. 1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence).   Moreover, counsel's decision whether to call a witness at trial is normally a trial strategy decision that is presumed reasonable and cannot be challenged. *United States v. Rice*, 449 F.3d 887, 898 (8th Cir. 2006); *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005).

### 10.      Failure to Develop Defense Strategy

Petitioner next claims his counsel was ineffective for failing to "develop a defense strategy demonstrating that others, e.g., the "Hells Angels", were culpable for the death of Danny Coleman."  Petitioner's § 2255 Motion, p. 8A.  Contrary to Petitioner's claim, a review of the trial transcript establishes that defense counsel did have a defense strategy demonstrating that others were culpable for the death of Danny Coleman.

During counsel's opening statement, counsel began establishing that Joe Briskey was Larry Nolan's "go-to guy." He stated "[Karen Coleman is] involved for years in the methamphetamine distribution at Larry Nolan's behest, with his go-to men, the Hells Angels and Joe Briskey, who the evidence will show at the time of Danny Coleman's murder was the person that had most access to Larry Nolan." Tr. Trans. Vol. II, p. 41.   In cross-examination of Michael Kempker, counsel established that at the end of Larry Nolan's life, the only person who was there for him and consistently visiting him was Joe Briskey.   Tr. Trans. Vol. IIII-A, p. 29.   When cross-examining Karen Coleman, counsel established that there was somebody on the "outside" that was very close to Larry Nolan.   That person was Joe Briskey. Tr. Trans. Vol. III-B, p. 104. Counsel also established that Karen Coleman got involved with Nolan's other go-to men, Carasis and Bruno, who were members of the Hells Angels.   *Id*. at 111-12.   And he established that, out of all of Larry Nolan's associates, Briskey had the most contact with Larry Nolan around the time and immediately after Danny Coleman's death.   *Id*. at 113.   While cross examining Joe Briskey, counsel established that Briskey had visited Larry Nolan 36 or more times while Nolan was in prison and considered himself to be close to Larry Nolan. Tr. Trans. Vol. IV, p. 24-25.   In his closing argument, defense counsel argued that, if Larry Nolan wanted someone to get involved in

27

this type of dirty work, he was going to go to his Hells Angels buddies Tom Bruno and Art Carasis. And he was going to go to Joe Briskey who had the most contact with Larry Nolan at the time of Danny Coleman's death.   Tr. Trans. Vol. VI, p. 83.

Clearly, defense counsel was establishing that Joe Briskey, with the assistance of Bruno and Carasis, were responsible for Coleman's death, not Petitioner.   During Briskey's testimony, he provided an alibi for the time of the murder, stating he was out of town from October 21 to 23, 1992, on business for his company.   Tr. Trans. Vol. IV, p. 18.   However, on cross-examination, defense counsel established that the company for whom Briskey worked in 1992 was still in business and Briskey actually had no proof that he was not in the St. Louis area at the time of the murder.   *Id*. at 69.   Cross-examination of Agent Heistzler established that, with respect to corroborating what Briskey said about being out of town during the time of the murder, at no point did the agent try to subpoena work records to show Briskey was actually on a sales call outside the City of St. Louis at that time.   *Id*. at 214.   Finally, in closing argument, defense counsel argued:

> And why is this guy [Joe Briskey] worried? Think about it.   Closest person to Larry Nolan at the time of Danny Coleman's death. When he's first talked to by agents, he cannot account for whether or not he was in St. Louis.   And with all their investigation, with the business still in business there in Ladue, does anybody go check the records to see if Joe Briskey was, in fact, in St. Louis?
>
> Of course he's got concerns.   He does drugs with Karen Coleman and did drugs with Larry Nolan.   He sells drugs for Larry Nolan with his sister Michelle Nolan and with Karen Coleman.   And he's involved in a conspiracy with methamphetamine with Larry Nolan, Karen Coleman, and two Hells Angels, and he can't account for his time.   You don't think that guy's got something to worry about.

Tr. Trans. Vol. VI, p. 95.

It is apparent from the record that defense counsel developed a defense strategy that someone other than Petitioner was responsible for the death of Danny Coleman.   Counsel clearly attempted to point the finger to Joe Briskey.   As defense counsel engaged in the conduct Petitioner wanted, Petitioner is unable to establish that his counsel provided constitutionally infirm representation. Further, Petitioner cannot establish prejudice, as the outcome of his trial proceedings would not have been different.   Petitioner's claim should therefore be denied.

To the extent Petitioner believes some other defense should have been presented, his claim fails.   Counsel has no absolute duty to investigate particular facts or a certain line of defense. Under *Strickland*, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Id*. at 691.   Counsel's decision to rely on a specific defense to the exclusion of others – regardless of whether he investigated those other defenses – is a strategic one and does not amount to ineffective assistance unless the petitioner can prove that the avenue pursued was itself unreasonable.   *Id*. at 688.   A review of the record establishes that the defense counsel pursued in this case was not unreasonable.

### 11.    Failure to Establish Someone Other than Petitioner was Responsible

Similar to the previous claim, Petitioner claims counsel was ineffective for failing to "introduce evidence, gathered by various law enforcement agencies/departments, that indicated someone other than the petitioner was responsible for the murder of Danny Coleman." Petitioner's § 2255 motion, p. 8A.   This is, essentially, a repeat of Petitioner's tenth claim of ineffective assistance of trial counsel and, to the extent it overlaps with the previous claim, it should be denied for the reasons already stated.

29

To the extent Petitioner is arguing that his attorney failed to introduce evidence gathered specifically by law enforcement showing someone other than Petitioner was responsible, Petitioner fails to identify what that evidence is.   The Government certainly is unaware of any evidence showing that someone other than those parties identified at trial were responsible for the murder.

Petitioner carries the burden of proving his claims in a post-conviction proceeding. *Strickland*, 466 U.S. at 687.   He has failed to provide this Court with any evidence, even by way of proffer, to support this particular claim.   His claim should be denied.   Mere conclusory allegations are insufficient to support a claim for ineffective assistance of counsel.   *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance); *Estes v. United States*, 883 F.2d 645, 647 (8th Cir. 1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence).

### 12.    Failure to Subpoena Joe Briskey's Employer

According to Petitioner, his counsel was ineffective for failing "to subpoena the employer of Joe Briskey, and demonstrate that he was not out-of-town at the time of Danny Coleman's murder."   Petitioner's § 2255 motion, p. 8A.

Petitioner is correct that defense counsel did not subpoena Joe Briskey's employer to demonstrate that Briskey was not out of town at the time of Danny Coleman's murder. As already established previously, defense counsel's whole theory of defense was that Joe Briskey was Larry Nolan's go-to guy.   Therefore, when Karen Coleman first approached Nolan about wanting to kill her husband, Nolan would have turned to Joe Briskey to accomplish the deed.   The murder even took place at Joe Briskey's house.   Defense counsel was rightly trying to create a reasonable

30

doubt in the jury's mind that Briskey, logically, was the man involved – not Kornhardt.   Had defense counsel called Briskey's employer and learned that Briskey was in fact out of town for a business trip, defense counsel's entire theory of defense would have crumbled.   Without Joe Briskey to point the finger to, defense counsel was left with little else upon which to rely.

Clearly, one need only look at the record to determine that defense counsel's decision not to subpoena Joe Briskey's employer was one of trial strategy.   Issues of trial strategy are virtually unassailable in a post-conviction proceeding.   *Rice*, 449 F.3d at 897.   Petitioner's claim should be denied.

### 13.   Failure to Subpoena Witnesses

Next, counsel was purportedly ineffective because counsel "failed to subpoena witnesses who would have demonstrated that Danny Coleman told them his plans for the evening when he was murdered."   Petitioner's § 2255 motion, p. 8A-8B.   Petitioner does not identify who those witnesses would be.   Moreover, Petitioner does not mention anywhere in his motion what Danny Coleman's plans purportedly were for the evening he was murdered and why those plans would be probative of the issues in his case. Without this information, it is impossible to assess counsel's performance with respect to this issue.   Again, the burden in § 2255 motions is upon the petitioner to establish that he is entitled to relief. *Strickland*, 466 U.S. at 687-88.   Conclusory allegations of ineffective assistance are insufficient. *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001). Petitioner's claim thus fails.

### 14.   Failure to Subpoena Son of Danny Coleman Regarding Plans

Petitioner claims that his attorneys should have subpoenaed the son of Danny Coleman, who would have testified as to his father's plans on the evening that Danny Coleman was

murdered.   Petitioner's § 2255 Motion, p. 8B.   However, Petitioner again does not disclose to this Court what Danny Coleman's plans were and, assuming there were plans, how that information (had it been presented to the jury) would have had any effect on the jury's verdict. Thus, Petitioner cannot establish either prong of the *Strickland* analysis and this claim should be denied.

      **15.**    **Visitor's Logs**

      Petitioner asserts his attorneys were ineffective when they failed to subpoena officials from the Missouri Department of Corrections to "demonstrate that the visitors' logs, from the institution where Larry Nolan and Michael Kempker were incarcerated, did not support the respective trial testimony of Karen Coleman and Michael Kempker, concerning prison visits by Karen Coleman, James Kornhardt, Michele Nolan, and the father of Michael Kempker."   Petitioner's § 2255 motion, p. 8B.   Petitioner's claim fails because the Government subpoenaed those records and provided them to defense counsel in discovery.   The records were incomplete and actually worked to neither party's advantage in most instances, including the ability to verify the meeting between Kornhardt and the Kempkers.   However, where the prisoner logs benefitted Petitioner's case, defense counsel clearly utilized them, as seen in defense counsel's cross-examination of Joe Briskey, where counsel was able to verify from the logs that Briskey had visited Larry Nolan at least 36 times while at the prison.

      Because trial counsel already had access to the prison logs, counsel was not ineffective for failing to subpoena them himself.   Moreover, as a result, Petitioner cannot establish that the outcome of his criminal proceedings would have been different.   Petitioner's claim fails.

16.     **Deposits of Inmate Accounts**

Petitioner claims he was subjected to ineffective assistance of counsel because his counsel "did not subpoena officials from the [Missouri Department of Corrections] to testify concerning deposits to the inmate accounts of Larry Nolan and Michael Kempker, and concerning telephone records of calls made by Larry Nolan and Michael Kempker."   Petitioner's § 2255 Motion, p. 8B.

Petitioner's claim fails because he cannot establish his attorney's performance in this regard was constitutionally infirm.   As the Court recalls, with respect to Larry Nolan's account, the Government called Rodney Kueffer as a witness.   Mr. Kueffer was the finance officer for the Missouri Department of Corrections.   He was asked to review Larry Nolan's inmate accounts and review the records specifically for deposits made by Petitioner, Karen Coleman or Alfred or Bonita Kempker.   He then provided testimony regarding the amounts each of these individuals paid into Larry Nolan's account. Tr. Trans. Vol. III-A, p. 55-62.

On cross-examination, defense counsel established that Larry Nolan was selling leather goods to Alfred Kempker, thereby explaining the money paid by him into Larry Nolan's account. Defense counsel further established that the witness had no knowledge why these people contributed the amounts they did.   Moreover, the $827 that Petitioner paid to Larry Nolan's account over five and one-half years was not an unusually high amount for a friend to contribute. *Id.* at 63-66.

Counsel was not ineffective for failing to call an officer from MODOC to testify concerning the deposits to Larry Nolan's account because the Government had already provided the witness and counsel had ample opportunity to cross-examine the witness in an effective manner.   Therefore, Petitioner cannot establish the "performance" prong of the *Strickland*

33

analysis.   Moreover, as a witness testified on this subject matter, even assuming counsel should have called his own witness, Petitioner fails to establish what another witness would have testified to and how that testimony would have altered the outcome of his trial proceedings.   Without that, Petitioner fails to establish the "prejudice" prong of the *Strickland* analysis as well.

As for the inmate account of Michael Kempker, Petitioner fails to establish what testimony a prison official would have established with respect to his account that would have been beneficial to his case.   As Petitioner has failed to carry his burden on this issue, Petitioner's claim should be denied.

### 17.   Failure to Subpoena Karen Coleman's Son Regarding Bank Funds

Petitioner argues that his counsel was ineffective for failing to subpoena Karen Coleman's son, and his girlfriend Dawn, to testify "concerning the fund which Karen Coleman allegedly withdrew from her bank account and kept in a drawer at the house, and which Karen Coleman invaded to remodel bedrooms, purchase cars, pay taxes and insurance, and make loans to friends or gifts to acquaintances."   Petitioner's § 2255 Motion, p. 8B.

Petitioner does not explain what testimony he expects Joby Coleman would have given at trial regarding the funds Karen Coleman kept at the house and the purposes for which she used them.   Without such an explanation, Petitioner simply does not carry his burden of establishing that he received constitutionally infirm representation. *Strickland*, 466 U.S. at 694. Moreover, without that information, it is impossible to assess how the outcome of Petitioner's trial could have been affected had counsel called Joby Coleman as a witness.   Petitioner's conclusory allegation fails and should be denied. Finally, "[t]he decision not to call a witness is a virtually

34

unchallengeable decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005); *Hanes v. Dormire*, 240 F.3d 694, 698 (8th Cir. 2001).

**18.     Failure to Exclude Recorded Jail Calls**

Petitioner contends that his attorneys engaged in the "procedural error" of "ma[king] no attempt to have James Kornhardt's recorded jail telephone calls to his wife excluded on the basis that the audio recordings were obtained from the jail without a valid Search Warrant or subpoena." Petitioner's § 2255 motion, p. 8B-8C.

Petitioner is unable to establish the "performance" prong of the *Strickland* analysis.   First, contrary to Petitioner's argument, counsel did attempt to exclude the recorded jailhouse calls. Counsel filed a motion in limine with the Court.   [DCD 250]   Second, even though counsel in its motion in limine did not assert Petitioner's search warrant or subpoena argument, counsel's performance was not deficient for failing to do so.   The Government, under the law, is not required to obtain a search warrant for the jail recordings.   Search warrants are necessary when the Government is attempting to invade areas in which a defendant has a reasonable expectation of privacy.   While in jail talking on the jail telephone, Petitioner had no such expectation. Therefore, trial counsel had no reason to challenge the lack of search warrant in this case.   As Petitioner fails to meet the performance prong, Petitioner's claim of ineffective assistance of trial counsel fails. *Strickland,* 466 U.S. at 697 (1984).

For the same reasons, Petitioner cannot establish the "prejudice" prong of the *Strickland* analysis.   As Petitioner filed a motion to exclude the jailhouse recordings, the very conduct Petitioner now claims he wanted, Petitioner cannot show that the outcome of his proceedings would have been different. Moreover, had counsel raised the arguments Petitioner suggests, such a

claim would have failed for the claim lacked merit.   Thus, again, the outcome of Petitioner's criminal proceedings would not have varied.

### 19.   Rule of Completeness

Counsel was purportedly ineffective for failing "to insist that the rule of completeness be enforced by insuring that all of petitioner's aforesaid telephone conversation, in which his wife told him that he wanted all of the guns out of the house, was introduced into the record." Petitioner's § 2255 Motion, p. 8C.   According to Petitioner, "this inflicted unfair prejudice on the petitioner because the portion played to jurors reflected that the petitioner was acting for purposes of obstructing justice instead of obeying his wife's demand."   *Id.*

The decision not to have all jailhouse recordings played in their entirety was clearly a matter of trial strategy, as established by the record.   As noted earlier, defense counsel filed a motion to exclude the jailhouse records in their entirety. [DCD 250]   In the alternative, counsel requested that the jailhouse recordings be redacted.   Counsel argued that the recorded phone calls of Petitioner with his family "generally touché[d] on matters related to his case, such as his relationship with his wife, raising money for family expenses, and his reaction to the development of his case and witnesses in it, including Stephen [sic] Mueller."   DCD 250 at p. 1.   Counsel argued that these conversations were not only irrelevant but unduly prejudicial to Petitioner's case. *Id.* at 2.   Clearly based upon this record, counsel made the strategic decision not to play the recordings beyond what the Government was offering.   Matters of trial strategy are virtually unreviewable in § 2255 post-conviction proceedings. *Rice*, 449 F.3d at 897.

Even assuming counsel should have insisted that all of the jailhouse phone recordings be played for the jury, Petitioner cannot establish prejudice.   As the Eighth Circuit noted in its

36

opinion, "[a]s to the murder-for-hire and conspiracy to commit murder-for-hire charges, the evidence against Kornhardt was overwhelming."   *United States v. Mueller*, 661 F.3d at 351.   In light of the overwhelming evidence establishing Petitioner's guilt, Petitioner is unable to meet his burden of establishing that playing additional recordings would have altered the outcome of his trial.

### 20.      Failure to Impeach Karen Coleman

Petitioner states his counsel was ineffective for failing to impeach Karen Coleman "through cross-examining her with the telephone records and prison visitation logs which would have demonstrated the falsity about having received telephone calls from Larry Nolan, or, visits with him in prison when the petitioner was alleged to have been present."   Petitioner's § 2255 Motion, p. 8V.

Contrary to Petitioner's argument, defense counsel did cross-examine Karen Coleman about the lack of any corroborating documentation.   As noted earlier, when counsel cross-examined Karen Coleman, he established that, although she claimed to have mailed Larry Nolan numerous letters, she did not have one letter to corroborate her testimony. Tr. Tran. Vol. III-B, p. 61.   In addition, although Karen Coleman testified she had called Petitioner several times from her cell "bag" phone, she did not have one document from the phone company to show these phones calls were actually made.   *Id*. at 62.   Karen Coleman testified that she wrote Petitioner's various phone numbers down in the back of one of her check registers.   Counsel established that she kept every one of her check registers *except* for the one which would have corroborated the various phone numbers of Petitioner's.   *Id*. at 88.

During closing argument, with respect to Karen Coleman's testimony, he argued:

> And nothing interestingly enough can be corroborated, not one word of what she said. She talks about what? She talks about all these letters. Letters on top of letters on top of letters talking about the doctor. Conveniently burned. She talks about, well, I jotted down the numbers on the back of potentially a check register. Not there. She talked about this story where she and Michelle Nolan heard that a tape recording of her implicating her was buried over on Tennessee. Led the detectives to it. Not there. Talked about a cell phone. Not there. Visiting records. Nothing is corroborated.

*Id.* at 92. Defense counsel's performance clearly focused on undermining Karen Coleman's testimony due to her inability to corroborate anything she said. To the extent Petitioner is asserting that counsel did not do enough to impeach Karen Coleman, Petitioner fails to state where counsel was specifically lacking. As repeatedly stated throughout this response, mere conclusory allegations are insufficient to support a claim for ineffective assistance of counsel. *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001).

Finally, counsel fails to meet the "prejudice" prong of the *Strickland* analysis. Petitioner does not explain what more he believes counsel should have done and how that additional performance would have affected the outcome of his criminal proceedings. Petitioner's claim thus fails and should be denied.

## 21.   Failure to Impeach Karen Coleman and Joe Briskey

Petitioner also states his counsel was ineffective for failing to impeach "the trial testimony of Karen Coleman and Joe Briskey, with questions that would have demonstrated that their respective testimony was based on recalling facts that they had read about in police reports, or were told to them by agents/officers, instead of memory of actual events they had witnessed." Petiitoner's § 2255 Motion, p. 8C.

38

Again, the record establishes that trial counsel did challenge Karen Coleman and Joe Briskey vigorously on their inability to keep their stories straight and the many versions of their stories that they provided to law enforcement.   The Government's direct examination of Karen Coleman covers 19 pages of the trial transcript.   Counsel's cross-examination lasted several hours and covered over 125 pages of the trial transcript (the trial transcript is approximately 1,000 pages long; counsel's cross of Karen Coleman was over 10% of that).   The Government's direct examination of Joe Briskey covered 17 pages of the trial transcript.   Cross-examination by Petitioner's counsel consisted of 55 pages.   Counsel established with both witnesses that they had met with the Government (either the prosecutors or the agents) on many occasions to discuss this case and review their testimony, that their testimony kept changing with each meeting and that their stories were not corroborated by any physical evidence.   Clearly, the cross-examination of these two witnesses was effective and thorough.   As such, Petitioner cannot establish that his counsel provided constitutionally infirm representation in this regard.

Further, Petitioner cannot establish prejudice.   That is, Petitioner cannot explain to this Court how the outcome of his trial proceedings would have been different had only counsel cross-examined these two witnesses in some manner other than what he did.   Petitioner's claim fails.

### 22.    Failure to Impeach Agents and Officers

Petitioner also believes his counsel was ineffective for failing

> to impeach the trial testimony of agents and officers "with questions designed to demonstrate to jurors that they had coached Karen Coleman, Joe Briskey, and Michael Kempker, about the necessity of testifying to specific facts, and that this was accomplished through a process of leading questions, or statements which included the desired response, and that each witness was allowed to infer, from

39

> those questions or statements, that it was in their respective penal interests to include in the trial testimony regardless of its truth or falsity (the officers and agents should have been impeached with failing to record the conferences with Karen Coleman, Joe Briskey, and Michael Kempker, as such recordings would have clearly revealed that they obstructed justice and subponed [sic] perjury by counseling or encouraging these witnesses to commit perjury at the trial).

Petitioner's § 2255 Motion, p. 9D.

Contrary to Petitioner's claim, counsel did "impeach" the case agent with questions designed to demonstrate that he had "coached" the witnesses.   For example, counsel established that Agent Heitzler had interviewed Karen Coleman on eight different occasions.   Tr. Trans. Vol. IV, p. 181-82.   As for Joe Briskey, cross-examination established the agent had talked to him on five occasions.   *Id.* at 208-23.   With respect to both witnesses, counsel established that their stories changed from meeting to meeting.   Certainly, one of the purposes of this trial tactic on the part of defense counsel was to imply to the jury that the agent was trying to get the witnesses to change their stories to fit the prosecution story.   This was further illustrated by counsel's cross-examination of the agent regarding his meetings with Steven Mueller, when counsel elicited testimony from the agent that he told Mueller to talk with his counsel in order to get his story straight.   Id. at 202-203.

A review of all 1,000+ pages of the trial transcript leaves one with the firm impression that one of counsel's trial tactics was to establish that the Government had manipulated the evidence to fit its theory of prosecution.   Therefore, as counsel engaged in the very conduct Petitioner wanted him to, counsel's performance cannot be found to be ineffective.

## 23.   Dismissal of Indictment

According to Petitioner, counsel was ineffective for failing to

40

> seek dismissal of the indictment on the basis that the failure of the agents/officers to either record the conferences or sessions with Karen Coleman, Joe Briskey, and Michael Kempker, or, to prepare notes thereof, deprived James Kornhardt of his only defense to the charge, i.e., that they were testifying falsely, and, effectively, denied him of his Sixth Amendment entitlement to be represented by counsel, because, without those notes or recordings, the petitioner could not defend against the charge.

Petitioner's § 2255 Motion, p. 8E.

Counsel was not ineffective for failing to raise this present argument in a motion to dismiss. The failure of an agent to record interviews is not the basis for a motion to dismiss an indictment. Had counsel filed such a motion, it most assuredly would have been rejected by the Court. Therefore, Petitioner cannot establish prejudice.

**24.    Pretrial Ruling Regarding Admissibility of Karen Coleman's Testimony**

Petitioner asserts that his attorneys were ineffective for failing to seek a pretrial ruling regarding the admissibility of Karen Coleman's testimony, "especially the parts involving hearsay. Karen Coleman suffered memory problems and mental disorders. Thus, it was impossible for jurors to determine whether Karen Coleman testified about what she was told, what she read, what she va[g]uely recalled, or what she thought prosecutors wanted and needed for her to say." Petitioner's § 2255 Motion, p. 8G.

The issues Petitioner has with respect to Karen Coleman's testimony go to the weight given to her testimony, not to the admissibility of her testimony. Counsel simply would not have succeeded on such a motion. Counsel was effective in his cross-examination of Karen Coleman, during which time counsel interrogated Coleman on many of the issues Petitioner asserts. *See* Tr. Trans. Vol. III-B, 27-153.

As there is no merit to Petitioner's claim, he cannot establish ineffective assistance of counsel.   This claim should be denied.

**25.     Confession of Steve Mueller**

Petitioner asserts his counsel provided ineffective assistance of counsel because counsel did not "properly address the issue of allowing the confession of co-defendant Steve Mueller, to be introduced at the trial."   Petitioner's § 2255 Motion, p. 8H.   Petitioner contends that separate trials would have avoided the "unfair prejudiced suffered by James Kornhardt when jurors were allowed to hear the extra-judicial, unsworn, and uncross-examined, hearsay statements of co-defendant Steve Mueller."   This was in violation of *Bruton v. United States*, 391 U.S. 123 (1968). *Id*. at p. 8I.

Contrary to Petitioner's assertion, counsel did challenge the admissibility of Steve Mueller's statements, repeatedly and at every opportunity.   For example, counsel filed a motion to sever his case from his co-defendants on the grounds that the jury may hear evidence that implicated him, even if the Court were to issue a limiting instruction warning the jury not to consider said evidence against Petitioner. Counsel argued that "because the statements of co-defendants are likely admissible against the codefendants in this case, but inadmissible with regard to Defendant due to hearsay, confrontation and due process concerns, severance of Defendant from his co-defendants is proper." DCD 88, at p.6.   Counsel for Petitioner also filed a motion in limine to exclude hearsay statements, which included the admissibility of all of Steven Mueller's statements.   DCD 236.   Counsel filed a motion for reconsideration of his motion in limine to exclude co-defendant admissions. DCD 243.   Counsel raised this argument again on the first day of trial.   Tr. Trans. Vol. 1, p. 4-6.   Counsel challenged the statements repeatedly before

the District Court during trial.  *See e.g.* Tr. Trans. Vol. II, p. 183.   Indeed, at every available opportunity, counsel challenged the admissibility of Steve Mueller's statements.   Because counsel engaged in the conduct Petitioner wanted him to, Petitioner cannot be heard to complain that counsel was ineffective.

For those same reasons, Petitioner cannot meet the "prejudice" prong of the *Strickand* analysis.   If counsel performed as Petitioner wanted, then Petitioner simply cannot establish that his defense was harmed in any way.   Petitioner's claim should be dismissed.

### 26.    Failure to Request Jury Instruction

Next, petitioner claims constitutional deprivation based on counsel's failure to request the court "to give a jury instruction informing jurors that they could not base guilt simply due to James Kornhardt's failure to establish an 'alibi.'"   Petitioner's § 2255 Motion, p. 8J.

A review of the trial transcript reveals there was never any discussion about whether Petitioner did or did not have an alibi. An alibi instruction will not be given unless there is supportive evidence that the defendant was somewhere other than the place of the crime during the entire time the crime was being committed. *United States v. Acosta*, 110 F.3d 70 (1997) (unpublished) (because defendant failed to show any evidence to support an alibi defense, he was not entitled to an alibi jury instruction; thus, defendant failed to show that counsel's failure to request an alibi instruction was ineffective assistance).   Therefore, counsel was not ineffective for failing to request such an instruction.   Moreover, Petitioner cannot establish that, even if counsel should have requested such an instruction, the Court would have granted it *and* the instruction would have altered the jury's verdict.   Thus, Petitioner cannot establish prejudice.   Petitioner's claim fails.

### 27.    Absence of Communication Between Karen Coleman and Kornhardt

Petitioner asserts his attorneys provided ineffective representation by failing to reveal "the total absence of any communication occurring between Karen Coleman and James Kornhardt, after law enforcement authorities reactivated the closed case in the late 1990s. It is only natural for conspirators to keep one another informed of the progress of any investigation."  Petitioner's § 2255 Motion, p. 8J.  Thus, Petitioner challenges whether a conspiracy could have been in existence when the evidence shows a termination of his alleged association with Karen Coleman in 1994.  *Id.*

Even assuming counsel should have mentioned that there was no communication between Karen Coleman and Petitioner after the authorities reactivated the case in the late 1990s, Petitioner cannot establish prejudice.   In light of the overwhelming evidence of Petitioner's guilt, *see United States v. Mueller*, 661 F.3d at 350-51, Petitioner cannot establish that the outcome of his criminal proceedings would have been different had the jury heard this evidence.

### 28.    Motion to Dismiss Based on Expiration of Limitations Period

Petitioner claims:

> Defense attorney did not properly present arguments in support of dismissing the indictment based on expiration of the limitations period. The alleged conduct of James Kornhardt occurred outside the limitations period.  Jurors only found him guilty based on acts which occurred outside of the five-year statute of limitations. Jurors were never requested to make a finding as to when the petitioner's acts were completed.  Defense attorneys did not make an argument based on the legal principle that time limitations begin "to run on the date the offense is first committed."   United States v. Hook, 781 F.2d 1166 (6th Cir. 1985).  Proper argument and legal research would have resulted in a dismissal of the charges.

Petitioner's § 2255 Motion, p. 8K.

Contrary to Petitioner's argument, defense counsel did file a motion to dismiss based on the expiration of the statute of limitations.   *See* DCD 95. Petitioner's claim that his counsel was somehow ineffective in this regard is therefore inconsistent with the record and should be denied.

### 29.   Fingerprint Analysis is Being Disputed

Petitioner claims that, at the time of his trial, the science behind fingerprint analysis was being disputed because it failed to meet the *Daubert* criteria.   Petitioner believes that counsel was ineffective for failing to challenge the admissibility of the fingerprint expert witnesses on this basis.   Petitioner's § 2255 Motion, p. 8L.

Again, the record is inconsistent with Petitioner's claim.   Counsel filed a motion in limine to exclude latent fingerprint testimony based on this very argument.   *See* DCD 231.   In his motion, counsel requested that the Court exclude the testimony of all forensic fingerprint examiners the Government intended to call, to hold a hearing on counsel's motion, and to apply the principles from *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to exclude all testimony from such witnesses "because latent fingerprint analysis, and specifically the latent fingerprint analysis utilized in this case, does not meet Daubert's standard for admissible expert testimony."   DCD 231, p. 1.   This Court heard argument on counsel's motion preceding voir dire and overruled the motion.   Tr. Trans. Vol. 1, p. 3.   Defense counsel then renewed his objections to the testimony during the trial.   *See e.g.* Tr. Trans. Vol. II, p. 171.

As defense counsel engaged in the very conduct Petitioner wanted him to, Petitioner cannot now be heard to complain about his counsel's performance.   Moreover, Petitioner cannot establish prejudice.   Therefore, his claim should be denied.

30.     **Prosecutor's Closing Argument**

Petitioner next claims that his counsel was ineffective for failing to object to and to request a mistrial when the prosecutor argued in his closing argument that Danny Coleman was killed due to a bullet wound.   Petitioner argues that this was in direct contradiction of the evidence, including the Government's own expert.   Petitioner explains further:

> Thus, the prosecutor was encouraging jurors to ignore the evidence and find that Danny Coleman was killed by a gunshot wound because, otherwise, the petitioner's recorded telephone call to his wife, from the jail, would demonstrate the falsity of the government's theory and make fools of the agents and prosecutors. Great reliance was placed on James Kornhardt's aforesaid telephone call for purposes of establishing his culpability.   It constituted the single piece of direct evidence wherein prosecutors could contend that he was expressing his consciousness of guilt.   Without some proof that Danny Coleman died from a gunshot wound, then the government's case would have collapsed.   Thus, prosecutors were forced to continue arguing, in contradiction of their own proof, that Danny Coleman was shot, and that the murder weapon was stored in James Kornhardt's house.   This was total nonsense, and defense counsel failed to protect his client by allowing the prosecutor to make the argument.

Petitioner's § 2255 Motion, p. 8M.

As a review of the trial testimony establishes, the prosecutor's closing argument was not improper.   Directing the Court's attention to the Government's direct examination of pathologist Dr. Mary Case, she testified that the left side of the victim's head was missing from the side to the back.   That portion of the skull was gone.   Tr. Trans. Vol. V, p. 31-34.   She stated that something disrupted the brain but she could not say what it was.   *Id*. at 38.   She noted that an x-ray revealed that there were multiple small fragments that were opaque, which could be metal. She could not tell with certainty whether it was related to a gunshot wound.   It could be consistent with a gunshot wound but she could not say definitively.   *Id*. at 28-45.   With respect to the

46

victim's body, evidence established that approximately 100 pounds of the victim's body was missing.  In particular, Dr. Case testified that ribs were missing, much of the chest wall was missing, and skin, soft tissue, muscle and much of the bone were missing.  She testified that if a bullet traveled through any of this missing body area, she would not be able to determine that.  *Id*. at 39-45.

Defense counsel called their own pathologist.  On cross-examination, Dr. Edward Edelstein agreed that, as far as the side of the skull that was missing and as far as the ribs and chest tissue that were missing, it would be pure speculation to say what could have happened or what type of trauma may have occurred in those areas.  Tr. Trans. Vol. V, p. 80-81.

The Government's closing argument was consistent with the testimony of both pathologists.  As such, defense counsel was not ineffective for failing to object to the Government's closing argument.  Moreover, even should counsel have objected, Petitioner cannot establish that the outcome of his criminal proceedings would have differed.

### 31.    Failure to Seek Statute of Limitations Instructions

Petitioner argues that the jurors should have been allowed to decide the statute of limitations questions.  "The court gave a directed verdict to the government on this issue by not submitting it to the jury, i.e., whether the indictment was returned within five years of any criminal act by James Kornhardt, which violated 18 USC § 1958, that is in effective at the time of Danny Coleman's death."  Petitioner's § 2255 Motion, p. 8N.  As such, Petitioner argues that his counsel was ineffective for failing to request jury instructions directing jurors to determine if the petitioner's alleged conduct occurred prior to 1994.  *Id*. at p. 8-O.

47

Petitioner's counsel was not ineffective for failing to request a jury instruction allowing the jury to decide the statute of limitations issue.   The issues surrounding the statute of limitations in this case were legal questions for the court.   Therefore, counsel did not engage in constitutionally infirm representation when counsel deferred to the Court's ruling on this issue.   As counsel's performance was not constitutionally infirm, Petitioner necessarily cannot establish that he was prejudiced by counsel's performance.   That is, even had counsel requested such a jury instruction, the Court, based upon the well-settled law, would have rejected such a request.   Therefore, Petitioner cannot establish that the outcome of his criminal proceedings would have differed had only counsel pursued such a meritless request.   Petitioner's claim thus fails and should be denied.

### 32.    Validity of the Indictment

Petitioner contends that his trial counsel was ineffective when counsel failed to challenge the validity of the indictment.   According to Petitioner, a grand jury convened in 1999 in this case and refused to return a "True Bill."   Then, another grand jury convened in 2008 and, even though this grand jury had no additional new evidence, the grand jury returned an indictment.   Petitioner believes that his counsel was ineffective for failing to discover what the additional proof was. Had counsel done so, it would have been revealed that law enforcement had no additional evidence linking James Kornhardt to the murder of Danny Coleman which they did not possess in 1999 and the indictment would have been dismissed. Petitioner's Motion at p. 8P.

The foundation for Petitioner's claim is in error.   A grand jury did convene in 1999 in this case for the purpose of putting testimony before the grand jury, specifically the testimony of Michael Kempker.   However, the grand jury was not asked to return a "True Bill" at that time. Often times, with ongoing investigations, witnesses are called to the grand jury at various times.

48

There is no constitutional right for a defendant to have his entire case presented to the grand jury at one time.

As there is no basis for Petitioner's argument, his claim that counsel was somehow ineffective for failing to challenge this in a motion to dismiss is without merit.   Instead, counsel's decision not to file such a motion shows once again that Petitioner's experienced counsel was fully aware there were no concerns with the presentation to the grand jury.   Petitioner's claim should be denied.

### 33.   *Lafler* and *Frye*

Petitioner asserts that he was denied the benefit of plea negotiations pursuant to *Missouri v. Frye* and *Lafler v. Cooper*, which require defense attorneys to engage in a plea bargaining session with federal prosecutors.   Petitioner's Motion, p. 8P.   Petitioner misunderstands these recent Supreme Court decisions.

In *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), the Supreme Court held that the petitioner was prejudiced by his counsel's deficient performance in advising petitioner to reject a plea offer and proceed to trial. In *Missouri v. Frye*, 132 S.Ct. 1399 (2012), the Supreme Court held that defense counsel was deficient, as an element of a claim of ineffective assistance of counsel, in failing to communicate to defendant the written plea offers from the prosecutor, which included terms and conditions that may be favorable to the accused.   Neither of these situations was present in this case.   Petitioner's claim should be dismissed.

### 34.   **Failure to Seek Hearing**

Petitioner contends that he received ineffective assistance of trial counsel because counsel failed to demand a hearing on whether law enforcement authorities prepared or took notes of their

interviews with Karen Coleman, Steve Mueller, Michele Nolan, Michael Kempker and Joe Briskey.   Petitioner's Motion at p. 8Q.

Defense counsel filed many pretrial motions on Petitioner's behalf.   One of those motions was a motion to preserve and produce any rough notes maintained by the agents in this case. [DCD 91]   At the August 28, 2009, evidentiary hearing before the Magistrate Court, counsel for the Government responded that the Government had already instructed its investigators and agents to preserve investigatory materials.   Thus, the Magistrate Court denied the motions without prejudice as moot.   *See* Magistrate Court's Opinion [DCD 157], p. 17-18.

Defense counsel obviously protected Petitioner's rights with respect to the agents' rough notes.   He filed a motion.   There was a hearing.   Petitioner was provided all the relief to which he was entitled.   Therefore, his counsel was not ineffective.   This claim should be denied.

### 35.    Closing Argument Regarding Mueller's Statements

Finally, Petitioner claims counsel improperly failed to object to the prosecutor's closing argument when the prosecutor directed the jurors' attention to the confession and extra-judicial statements made by Steve Mueller, which were admitted into evidence against Mueller but not to be used against Petitioner.   "However, the prosecutor disregarded the court's cautionary instruction on this issue by directing the jury's attention to Steve Mueller's aforesaid confession and statements and asking them to find the petitioner guilty based on Steve Mueller's said confession and extra-judicial statements, all without objection from the defense attorneys."   Petitioner's § 2255 Motion, p. 8R.

Contrary to Petitioner's argument, defense counsel did object.   After the prosecutor completed the first half of his closing argument, Petitioner's counsel approached the Court and

50

stated: "We want to renew our motion under the various motions we filed pursuant to Bruton and Crawford.   It is our position that Mr. Dittmeier, although most likely inadvertently, again mentioned Kornhardt in the context of not an individual, Mr. Kornhardt."   Tr. Trans. Vol. VI, p. 71.   The Court denied the objection.   *Id*. at 72.   As counsel performed consistent with Petitioner's claim, Petitioner fails to establish ineffective of assistance of counsel.   His claim should therefore be denied.

### D.     Ineffective Assistance of Appellate Counsel

Petitioner asserts that his appellate counsel was ineffective for failing to raise five issues on appeal.   Petitioner believes that each of these five arguments was more meritorious than those which appellate counsel actually raised on direct appeal.    Specifically, Petitioner believes counsel should have raised the following issues on direct appeal: (1) fingerprint testimony was incompetent; (2) petitioner was denied a Speedy Trial; (3) the indictment failed to allege an offense; (4) the evidence did not support a conviction for mail fraud and/or murder-for-hire; and (5) Petitioner was denied a fair trial when his co-defendant's confession was introduced.   In addition, Petitioner claims his counsel was ineffective for failing to seek a petition for rehearing due to the appellate court's erroneous conclusion that Petitioner's "Obstruction of Justice" charge was based on a telephone conversation with Steve Mueller.

### 1.     Applicable Standard

Because of the "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance" and the reality that effective appellate advocacy often entails screening out weaker issues, the Sixth Amendment does not require that appellate counsel raise every colorable or non-frivolous issue on appeal. *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir.1998)

51

(internal citations omitted); *see also Williams v. Kemna*, 311 F.3d 895, 897-98 (8th Cir.2002). While a defendant does have a limited due process right to counsel on the first appeal, this right does not impose a duty on the attorney "to advance every argument, regardless of merit, urged by the defendant." *Evitts v. Lucey*, 496 U.S. 387, 392 (1985) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). The deficient performance standard at this stage is rigorous. With respect to deficient performance, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal.   Therefore, absent contrary evidence, [courts] assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *United States v. Brown*, 528 F.3d 1030, 1032-33 (8th Cir. 2008) (internal quotations and citations omitted).   The prejudice prong requires the Movant to demonstrate that there is a reasonable probability that he would have been successful on appeal had appellate counsel raised the issue. *See Smith v. Robbins***,** 528 U.S. 259, 285-86 (8th Cir. 2000).

### 2.        Fingerprint Testimony

The full extent of Petitioner's argument is that appellate counsel was ineffective for failing to argue on appeal that "fingerprint testimony was incompetent, and not in accordance with Supreme Court opinions addressing expert testimony."   Petitioner's § 2255 Motion, p. 9. Petitioner does not explain in what way the fingerprint testimony was incompetent or identify those Supreme Court opinions with which it conflicts.   Such a conclusory allegation is insufficient to establish ineffective assistance of appellate counsel. *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001).

Regardless, the Eighth Circuit has consistently held that fingerprint evidence and analysis is generally accepted.   *See United States v. Ibarra*, 397 Fed.Appx. 285 (8th Cir. 2010); *United*

*States v. Spotted Elk*, 548 F.3d 641, 663 (8th Cir. 2008); *United States v. Janis*, 387 F.3d 682 (8th Cir. 2004); *United States v. Collins*, 340 F.3d 672, 682 (8th Cir. 2003).   The fingerprint testimony and analysis in Petitioner's case was clearly consistent with the principles enunciated in these cases.   Therefore, Petitioner is incapable of establishing that his counsel's performance was constitutionally infirm for failing to raise this meritless argument on direct appeal.   Moreover, as the argument lacks merit, Petitioner cannot establish prejudice.   That is, Petitioner has presented nothing to explain why, in his particular case, the Eighth Circuit would have reached a different conclusion than those cases listed above and reversed Petitioner's conviction based on the fingerprint evidence.   Petitioner's claim fails and should therefore be denied.

      **3.**      **Speedy Trial**

      Petitioner asserts only that he was denied a speedy trial.   Petitioner believes that his counsel should have asserted this claim on direct appeal.   Counsel's decision not to raise this meritless argument on appeal was a sound one.

      A review of the docket sheet in Petitioner's case establishes that Petitioner was indicted on the original charges on December 11, 2008, and made his initial appearance the next day.   At his arraignment on December 17, 2008, he filed a motion for additional time in which to file pre-trial motions.   [Docket No. 31]   That tolled the speedy trial calculations.   Trial was scheduled for March 2, 2009. [Docket No. 31]   In January 2009, the parties requested a continuance of the trial setting.   This Court issued a Speedy Trial Order, in which it granted the parties' request for continuance, reset the trial for July 6, 2009, and found that any elapsed time was excludable under the Speedy Trial Act. [Docket No. 42].   In April 2009, a superseding indictment was returned against Petitioner by the grand jury. [Docket No. 64]   Petitioner was arraigned on the superseding

indictment and, on June 5, 2009, filed numerous pretrial motions with the Magistrate Court. [Docket Nos. 85-91].   On June 9, 2009, the parties again filed a joint motion to continue the trial date.   This Court granted the motion and set the case for a status hearing on August 4, 2009.   The Court also issued a Speedy Trial Order declaring all elapsed time excludable under the Speedy Trial Act.   [Docket No. 97]   A second superseding indictment was returned on June 25, 2009. [Doket No. 105].   The Court held a status conference on August 4, 2009, and determined with input and approval of all parties that the case would be tried on March 1, 2010.   [Docket No. 111, 131]   An extensive motion practice then took place before the Magistrate Court from August 2009 through January 7, 2010, during which time motions were filed, hearings were held, transcripts were obtained, all of which tolled the speedy trial calculations.   In January the Magistrate Court completed ruling on all pretrial motions. However, defendants filed motions for reconsideration of the Magistrate Court's rulings two weeks later.   Those motions were under advisement until February 5, 2010.   [Docket No. 177]   Five days later, Petitioner filed objections to the report and recommendation. [Docket No. 182]   On February 18, 2010, Petitioner filed yet another request for continuance of the trial setting.   [Docket No. 184]   This Court granted that motion the next day, resetting the case for trial on May 10, 2010 and issuing a speedy trial order declaring all elapsed time to be excludable.   [Docket No. 185]   The Court granted another request for trial continuance by Petitioner on March 15, 2010, resetting the trial for June 7, 2010. [Docket No. 193]   The case then proceeding to trial on that date.

Clearly, a review of this tortuous record establishes that multiple speedy trial findings were made by the Court that the various extensions of time requested by Petitioner were in Petitioner's

best interests.   As Petitioner is the party that requested the numerous continuances, he cannot now be found to complain about being denied a speedy trial.

In light of the record, appellate counsel simply was not ineffective for failing to raise a speedy trial claim on direct appeal.   Any such claim would have been rejected by the Eighth Circuit.   As the claim lacks merit, Petitioner can meet neither the "performance" nor the "prejudice" prong of the *Strtickland* analysis.   Petitioner's claim thus fails.

### 4.   Indictment Failed to Allege an Offense

Petitioner next asserts his counsel should have argued on appeal that the indictment failed to allege an offense.   Petitioner does not explain in what way the indictment failed to state an offense.   As repeatedly stated before, mere conclusory allegations are insufficient to support a claim for ineffective assistance of counsel.   *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001); *Estes v. United States*, 883 F.2d 645, 647 (8th Cir. 1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence).

The Government assumes that Petitioner is challenging the indictment for the same reasons set forth in his first claim for relief.   If so, then for the reasons already stated, such a claim is without merit.   Appellate counsel therefore made the wise decision not to pursue this issue on direct appeal.   Certainly, his performance was not constitutionally infirm for electing to forego this argument.   For the same reason, Petitioner cannot establish prejudice.   That is, Petitioner cannot establish that the Eighth Circuit would have reversed his conviction had this issue been raised on appeal.

### 5.      Insufficient Evidence to Support the Verdict

Petitioner asserts his attorney should have argued on appeal that the evidence was insufficient to support the verdict.   Petitioner does not explain which count he is referencing or whether he is referring to all three counts.   Regardless, Petitioner's claim fails.

Counsel did not raise an insufficiency argument on direct appeal because the evidence was overwhelmingly in support of Petitioner's guilt. Thus, any such claim would have been rejected.

In reviewing the sufficiency of the evidence, the Eighth Circuit looks at the evidence in the light most favorable to the verdict, resolves all evidentiary conflicts in favor of the government, and draws all reasonable inferences in favor of the government.   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Sanders*, 341 F.3d 809, 815 (8th Cir. 2003); *United States v, Wright,* 340 F.3d 724, 730 (8th Cir. 2003).   With such a review of the evidence, the appellate court reverses a conviction only if *no* reasonable jury could have found the defendant guilty beyond a reasonable doubt.   *United States v. Brown*, 346 F.3d 808, 813 (8th Cir. 2003); *United States v. Hernandez*, 299 F.3d 984, 988 (8th Cir. 2002).   This standard is a strict one and a finding of guilt is not to be overturned lightly. *Sanders*, 341 F.3d at 815.

Reviewing the evidence in the light most favorable to the verdict, it is clear that the evidence established beyond a reasonable doubt that Petitioner was guilty of conspiracy to commit murder-for-hire, murder-for-hire and obstruction of justice. Although this issue was not raised on direct appeal, the Eighth Circuit nonetheless considered the strength of the Government's case when it determined that the admission at trial of Steve Mueller's grand jury testimony was harmless error, if error at all.   The Eighth Circuit specifically noted in its opinion:

> As to the murder-for-hire and conspiracy to commit murder-for-hire charges, the evidence against Kornhardt was overwhelming. Karen

56

> testified about Kornhardt's involvement in Danny's murder, including the discussions before Danny's death and the payments received after Danny's death.   Kempker also testified about Kornhardt's involvement before Danny's death.  There was also the recorded phone conversation where Kornhardt told Mueller to immediately remove several hidden items from the house shortly after Kornhardt was arrested for Danny's death….   Similarly, Kornhardt's recorded statements to his brother where he "[s]aid it doesn't look good for me" support the jury's verdict as well…. Finally, the presence of Kornhardt's fingerprint on the new box of matches found near Danny's burned body is a particularly strong piece of evidence.

*United States v. Mueller,* 661 F.3d at 350.

The Eighth Circuit engaged in a similar analysis with respect to the obstruction of justice charge:

> With regard to the obstruction of justice charge, the other evidence clearly establishes beyond a reasonable doubt that any error in admitting Mueller's grand jury statements was also harmless. Shortly after being arrested for Danny's death, Kornhardt called Mueller.  During the phone conversation, which the jury properly heard, Kornhardt ordered Mueller to immediately remove several items that were hidden throughout his house and detached garage. Kornhardt's wife initially answered the phone and remained in the house during the phone conversation.  She identified Kornhardt and Mueller as the speakers in the recorded conversation.   She also testified that she expected the police to search the house.  The recorded phone conversation significantly reduced the importance of Mueller's grand jury testimony because Mueller's grand jury testimony was largely cumulative of the phone conversation. When viewed collectively, the other evidence against Kornhardt as to the obstruction of justice was strong.

*United States v. Mueller*, 661 F.3d at 350.

In light of the Eighth Circuit's conclusions set forth above, it is clear that, even had appellate counsel raised an insufficiency of the evidence argument on direct appeal with respect to any of the three counts upon which Petitioner was convicted, it would have met with no success.

As such, Petitioner is incapable of establishing the "prejudice" prong of the *Strickland* analysis. If a defendant fails to establish prejudice as required by the second part of the *Strickland* test, a court need not address whether the attorney's representation was objectively reasonable. *Strickland,* 466 U.S. at 697 (1984) ("[T]here is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one.   In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."); *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (stating "the failure to establish prejudice can be dispositive of a case," and that the first part of the *Strickland* test need not be addressed if a Movant cannot show prejudice); *Cagle v. Norris*, 474 .3d 1090, 1097 (8th Cir. 2007) (finding Movant failed to meet burden under *Strickland* because even if counsel's representation fell below an objective standard of reasonableness, the representation did not result in prejudice).

### 6.      Introduction of Co-Defendant's Statement

Petitioner claims he was denied a fair trial when co-defendant Steve Mueller's confession was introduced.   Petitioner believes counsel should have argued this on appeal.   This argument was raised by appellate counsel.   The Eighth Circuit rejected the argument.   *United States v. Mueller*, 661 F.3d at 348-351.   Therefore, Petitioner's claim fails.

### 7.      Failure to Seek Rehearing

As for Petitioner's final claim of ineffective assistance of appellate counsel, Petitioner argues that his appellate counsel provided constitutionally infirm representation when counsel "allowed to go, uncorrected, the appeals panel finding that petitioner's 'Obstruction of Justice'

charge was based on a telephone conversation with Steve Mueller."   Petitioner's Motion, p. 9.

Essentially, Petitioner is contending that appellate counsel should have sought a motion for

rehearing on this issue or a petition for writ of certiorari.   However, Petitioner does not have a

constitutional right to counsel on discretionary appeals, which include petitions for rehearing and

writs of certiorari.   Without a constitutional right to counsel at either of these stages, one cannot

be deprived of effective assistance of counsel.   See *United States v. Straughan*, 2009 WL 553064

(D.Neb).   Therefore, Petitioner's final claim of ineffective assistance of appellate counsel should

be denied.

**E.     Insufficient Evidence to Support the Verdict of Obstruction of Justice**

Petitioner argues that the evidence was insufficient to support the guilty verdict on the

obstruction-of-justice count. Petitioner's § 2255 Motion, p. 10(1).

**1.     Procedural Default**

Petitioner failed to raise this issue on appeal.   If a claim could have been raised on direct

appeal but was not, it cannot be raised in a § 2255 motion.   "[N]ormally a collateral attack should

not be entertained if defendant failed, for no good reason, to use another available avenue of

relief." *Poor Thunder v. United States*, 810 F.2d 817, 823 (8th Cir.1987) (internal citation

omitted).

A procedural default can be excused in two circumstances.   First, a petitioner can

overcome the procedural default if petitioner can identify (1) a "cause" that excuses the default,

and "actual prejudice" resulting from the errors of which he complains. *See Mathews v. United*

*States,* 114 F.3d 112, 113 (8th Cir.1997)*; Ramey v. United States,* 8 F.3d 1313, 1314 (8th

Cir.1993).   Second, a petitioner can overcome the default if the petitioner can demonstrate actual

59

innocence. *Johnson v. United States,* 278 F.3d 839, 844 (8th Cir.2002) ("In order to obtain collateral review of a procedurally defaulted issue, a § 2255 movant must show either cause and actual prejudice, or that he is actually innocent.").   In his motion, Petitioner argues that the reason he did not raise this issue in his direct appeal is "due to the ineffective assistance of counsel, plus, the petitioner is "actually innocent" of the crime.   See Petitioner's § 2255 motion, p. 7.

Certainly, the "cause and prejudice " that must be shown to consider a procedurally defaulted claim may include ineffective assistance of counsel. *See Becht v. United States,* 403 F.3d 541, 545 (8th Cir.2005).   However, although ineffective assistance of counsel can constitute cause to excuse a default, a conclusory assertion of some unspecified inadequacy of a constitutional kind does not meet the cause requirement.   *See Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 691-92 (1984)) (Standard is whether counsel's error [i.e., default] was so egregious as to render his assistance below that guaranteed by the Sixth Amendment).   Petitioner has made a conclusory allegation that his counsel was ineffective for failing to raise this issue on direct appeal.   Such a claim is insufficient to overcome the procedural default and, therefore, Petitioner's claim is barred from review.

Although Petitioner alternatively claims "actual innocence" to excuse his procedural default, actual innocence is a strict standard that generally cannot be met "where the evidence is sufficient to support a conviction on the charged offense." *Id.* (internal quotation marks and citation omitted).   As a jury found sufficient evidence beyond a reasonable doubt to convict Petitioner, he cannot avail himself of the actual innocence exception.

2.    **Merits**

Assuming the Court elects to reach Petitioner's claim despite the procedural default, Petitioner's claim still fails.   As the Government stated previously, the Eighth Circuit has essentially weighed in on this issue and concluded that the evidence against Petitioner on the obstruction-of-justice charge was strong on this charge. *United States v. Mueller*, 661 F.3d at 350. Petitioner's claim should therefore be denied,

## F.    **Co-Defendant's Statements Deprived Petitioner of a Fair Trial**

For his final ground for post-conviction relief, Petitioner asserts that he was denied a fundamentally fair trial when the Court permitted jurors to be exposed to unsworn, extra-judicial statements made by co-defendant Steve Mueller even though law enforcement officers had rejected him as a witness for the government.

1.    **Procedural Bar**

Petitioner presented this issue to the courts during his criminal proceedings.   Therefore, he is procedurally barred from raising the claim again herein.   A motion to vacate may not be used to relitigate issues decided on direct appeal.   *Sun Bear v. United States*, 644 F.3d 700, 702 (8th Cir. 2011).   When a federal prisoner raises a claim that has been decided on direct review, he cannot later attempt to relitigate that claim in a Section 2255 proceeding.   *Withrow v. Williams*, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *United States v. McGee*, 2-1 F.3d 1022, 1023 (8th Cir. 2000); *Thompson v. United States*, 7 F.3d 1377, 1378-79 (8th Cir. 1993).   As Petitioner has already presented this issue to the Court of Appeal, he is procedurally barred from re-litigating that claim again here. This claim should be denied.

2.      **Merits**

Should this Court elect to consider the issue despite the procedural bar, Petitioner's claim

nonetheless fails for the reasons already found by this Court, as affirmed by the Eighth Circuit

Court of Appeals   *United States v. Mueller*, 661 F.3d at 248-251.

**V.**
**<u>CONCLUSION</u>**

For the reasons set forth above, the Government respectfully requests that this Honorable

Court deny Movant's § 2255 Motion for Post-Conviction Relief. Further, for those same reasons,

the Government respectfully requests that the Court deny any motion by Movant for a Certificate

of Appealability due to the failure of Movant to make a substantial showing that he has been

denied a constitutional right pursuant to 28 U.S.C. § 2253(c)(2). *See also, Tiedeman v. Benson,*

122 F.3d 518, 522 (8th Cir. 1997).


Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

<u>*s/Allison H. Behrens*</u>
Allison H. Behrens, #38482MO
Assistant United States Attorney
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the above and foregoing was mailed this

_____5th_____ day of August, 2013, postage prepaid United States Mail first class to:

**James K. Kornhardt**
#35821-044
TERRE HAUTE
U.S. PENITENTIARY
P.O. BOX 33
Terre Haute, IN 47808


*s/Allison H. Behrens*
ALLISON H. BEHRENS, #38482MO

63