# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JAMES K. KORNHARDT,                      )
                                         )
                Movant,                  )
                                         )
        v.                               )        No. 4:13-CV-214 CAS
                                         )
UNITED STATES OF AMERICA,                )
                                         )
                Respondent.              )

## MEMORANDUM AND ORDER

This matter is before the Court on federal prisoner James K. Kornhardt's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence ("Motion to Vacate").[1] The government has filed its response, and movant filed a traverse. This matter is fully briefed and ready for decision. For the following reasons, movant's motion is denied.

### I. Factual Background

This case arises from a murder that took place in October 1992 of Danny Coleman. Karen and Danny Coleman were married in January 1973. Mr. Coleman had a life insurance policy through his employment, and a credit life insurance policy which, in the event of his death, would

---

[1]Also before the Court are movant's two unopposed motions to supplement the record to provide additional authority. The Court will grant these two motions. In addition, movant filed a letter to the Clerk of Court, which the Court construes as a motion for an evidentiary hearing. Movant's motion for a hearing is generic, and he does not explain why a hearing is necessary in this case, such as identifying disputed evidence in the record or an issue requiring a credibility determination. The Court will deny movant's motion for an evidentiary hearing. "A § 2255 motion 'can be dismissed without a hearing if (1) the [movant]'s allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003) (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)).

pay off the mortgage on his home. Karen Coleman was the beneficiary on both life insurance policies, the value of which exceeded $25,000.00.

Sometime around 1990, Karen Coleman told her long-time friend Michelle Nolan that she wanted to kill her husband, Danny Coleman. Ms. Nolan directed Ms. Coleman to speak with her husband Larry Nolan, who was a convicted criminal imprisoned in the state penitentiary. Karen Coleman and Michelle Nolan visited Larry Nolan in prison. Mr. Nolan asked Ms. Coleman about the amount of life insurance Mr. Coleman had, and he agreed to have Mr. Coleman killed in exchange for part of the life insurance proceeds.

Movant was Mr. Nolan's close friend and a fireman with the Mehlville Fire District in Saint Louis County, Missouri. Mr. Nolan arranged for Ms. Coleman and movant to meet and discuss killing Mr. Coleman. Ms. Coleman met movant in Forest Park, and she gave him $2,000. They discussed the murder, and Ms. Coleman agreed to pay $15,000 to movant and an unspecified amount to Mr. Nolan to kill her husband.

Larry Nolan also contacted a fellow prisoner, Mike Kempker, in order to obtain a silencer to be used in the murder. Mr. Kempker told Mr. Nolan that he could have one made for $1,000, to which Mr. Nolan agreed. Mike Kempker then contacted his father, Alfred Kempker, who agreed to handle the transaction outside the penitentiary. An acquaintance of the Kempkers, Ricky Farris, agreed to make the silencer for $200. The other $800 would go to Mike Kempker. Movant met Al Kemper outside the penitentiary to give him his gun so that he could have it fitted with a silencer. In the summer of 1992, after Ricky Ferris made the silencer and fitted it to movant's gun, Al Kempker again met movant at the prison parking lot and delivered the gun and silencer to him in exchange for $1,000.

Movant enlisted the help of his long-time friend Steven Mueller to help kill Mr. Coleman. Movant told Mr. Mueller that he would receive some money for helping with the murder. On October 22, 1992, movant, Mr. Mueller, and another individual, "Dozer," beat Mr. Coleman to death in Michelle Nolan's brother's house in south Saint Louis City. Danny Coleman's body was transported to a field in Franklin County, Missouri, and his body was ultimately found in a truck that had been set on fire.

The autopsy showed that Mr. Coleman had been beaten to death. Also, portions of the body were missing, including a large part of his chest and skull. The investigator on the scene performed a search of the area, and an opened but lightly used box of kitchen matches was found near the truck. Fingerprints were found on the cellophane wrapper of the matchbox. At the time, the police were unable to match the fingerprints to anyone. The police investigation into Mr. Coleman's death eventually went cold.

After Coleman's death, Karen Coleman received approximately $150,000 in life insurance proceeds. The first payment she received was on October 6, 1993, and her final payment was received on July 15, 1997. On Larry Nolan's advice, Karen Coleman withdrew sums of cash in increments of $5,000 at a time, to be provided to movant as payment. Karen Coleman recalled meeting movant in October 1994, in a K-Mart parking lot in south Saint Louis County to deliver the money in small denominations.

In 1999, an inmate, Michael Kempker, disclosed information about Mr. Coleman's death to law enforcement. Mr. Kempker was friends with Mr. Nolan, who died in 1997. Mr. Kempker, who was still in the penitentiary, told investigators that the people responsible for the murder were movant, Karen Coleman, and Michelle Nolan. Mr. Kempker further told the police that he thought

the murder took place in a house in south Saint Louis City, and that he had procured a silencer for the murder. Based on the information from Mr. Kempker, law enforcement questioned movant. They eventually matched his fingerprint to one that had been found on the box of matches. Movant and Ms. Coleman were indicted for Mr. Coleman's murder.

While movant was in jail, he called his wife, Dianne, and instructed her to have Mr. Mueller at home on the evening of December 19, 2008. Movant called that evening and gave Mr. Mueller instructions to dispose of evidence relating to the murder-for-hire of Danny Coleman. Movant had Mr. Mueller remove a gun that was hidden in the basement fireplace. He also instructed Mr. Mueller to go to the garage and dispose of a gun, silencer, and ammunition that movant had hidden there. This telephone conversation was recorded and reviewed by law enforcement. After removing the items in the garage, Mr. Mueller made a comment to Mrs. Kornhardt that he "couldn't believe Jim kept this shit all these years." Mr. Mueller told Mrs. Kornhardt that he was going to throw the items in the river.

After listening to the recording, an agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives questioned Mr. Mueller about the items he removed from the house and garage and about Mr. Coleman's death. Mr. Mueller admitted to the agent that he had disposed of a silencer, gun, and ammunition. Mr. Mueller told the agent various stories about what had happened on the day that Mr. Coleman was killed, including one account of the murder where three men beat Mr. Coleman with bats and fighting sticks and then shot him three times. Mr. Mueller showed the agent where Mr. Coleman was killed and walked him through the crime scene while explaining what happened. Mr. Mueller admitted to the agent that he shot Mr. Coleman and had received $1,000 to $1,200 for his role in the murder. Mr. Mueller ultimately testified to a grand jury

that he had removed the silencer and gun from the house and garage after the phone conversation with movant.

## II. Procedural History

On December 11, 2008, a federal grand jury sitting in St. Louis returned an indictment against Karen Coleman and movant charging them with conspiracy to commit murder-for-hire (Count I) and murder-for-hire (Count II), both in violation of Title 18 U.S.C. § 1958. Attorneys Scott Rosenblum and Adam Fein entered their appearances on behalf of movant. The Federal Public Defenders Office was appointed to represent Karen Coleman.

On April 30, 2009, the grand jury returned a superseding indictment against Karen Coleman, movant, and Steven Mueller. A second superseding indictment was returned by the grand jury on June 25, 2009. In Count I, Karen Coleman, movant and Mr. Mueller were charged with conspiracy to commit murder-for-hire. In Count II, all three were charged with murder-for-hire. Count III charged movant with Obstruction of Justice, in violation of Title 18 U.S.C. § 1512(b)(2)(B). Count IV charged movant with Mail Fraud in violation of Title 18 U.S.C. §§ 1341 and 1342. Finally, Count V asserted forfeiture allegations against movant. Attorney Steven Stenger was appointed by the Court to represent Mr. Mueller.

Counsel for defendants filed a number of pretrial motions. Movant's counsel filed three motions to dismiss the indictment based on arguments that the indictment does not state an offense, it does not allege actual use of an interstate facility, and that it is barred by the statute of limitations. Movant's counsel also filed a motion to sever the defendants, to strike surplusage from the indictment, for disclosure of favorable, exculpatory, and impeaching evidence, to produce notes from law enforcement authorities, and to exclude statements from Karen Colemen and Steven

Mueller. A hearing were held before the Honorable Magistrate Judge David D. Noce on August 28, 2009. Magistrate Judge Noce issued his Reports and Recommendations on December 30, 2009 and January 6, 2010. Movant's counsel filed objections and a motion for reconsideration. The undersigned overruled movant's objections and sustained, adopted and incorporated the Reports and Recommendations of the Magistrate Judge.

Karen Coleman entered a plea of guilty on June 3, 2010. On August 31, 2010, she was sentenced to twenty years of incarceration in the Bureau of Prisons and five years of supervised release. Movant and Mr. Mueller elected to proceed to trial. Prior to trial, movant's counsel filed several motions in limine, including motions to exclude fingerprint testimony, evidence of alleged prior convictions or bad acts, jail house recordings, reference to lie detector tests, and reference to organized crime. Movant's counsel also filed a motion to reconsider the admission of statements by Karen Coleman and Steven Mueller.

Movant and Steven Mueller were tried together on June 7, 2010. After a six-day jury trial, movant and Mueller were convicted of murder-for-hire and conspiracy to commit murder-for-hire (Counts I and II). The jury also found movant guilty on the obstruction of justice charge (Count III).

Movant appeared before the undersigned for sentencing on September 23, 2010. The Court sentenced movant to a term of imprisonment of Life on Counts I and II, and a term of 240 months on Count III, all terms to be served concurrently.

Movant appealed his conviction and sentence to the Eighth Circuit Court of Appeals. Movant argued on appeal that his conviction was barred by the statute of limitations, that his motion for a trial severance was improperly denied, and that his Six Amendment right to confrontation was denied by the admission of Steven Mueller's unsworn, extra-judicial statements. On November 11,

2011, the Eighth Circuit affirmed the judgment of this Court, with the appellate court's mandate issuing on December 22, 2011. United States v. Kornhardt, 661 F.3d 338 (8th Cir. 2011).

On January 31, 2013, movant filed the instant motion for post-conviction relief pursuant to 28 U.S.C. § 2255. In the Motion to Vacate presently before the Court, movant asserts the following grounds for relief:

Ground One: Movant was denied due process of law by being convicted of a non-existent offense. See Doc. 1 at 4-15.

Ground Two: Movant was denied a fair trial and due process of law when prosecutors failed to place a "key witness," Michelle Nolan, on the stand. Id. at 15-22.

Ground Three: Movant was denied his Sixth Amendment right to effective assistance of counsel in that his trial counsel: (1) failed to object to numerous incidents of hearsay testimony; (2) did not protest the absence of clearly available corroborative proof, such as telephone records, records of prison visits, back statements; (3) failed to present an alibi defense; (4) failed to present evidence to the jury of movant's good character and reputation in the community; (5) did not prepare movant to testify on his own behalf at trial; (6) failed to employ a fingerprint expert; (7) did not object to testimony concerning application for life insurance proceeds; (8) failed to properly address and "educate" the Court on the element required for conviction under 18 U.S.C. § 1958; (9) failed to subpoena bank officials to testify regarding Ms. Coleman's checking account; (10) did not develop defense strategy that others, such as, the Hells Angels, were culpable for Mr. Coleman's death; (11) failed to introduce evidence gathered by law enforcement indicating someone other than movant was responsible for Mr. Coleman's death; (12) failed to subpoena the employer of Joe Briskey; (13) failed to subpoena witnesses who would have shown that Mr. Coleman told them his plans for the evening he was murdered; (14) failed to subpoena the son of Danny Coleman; (15) failed to subpoena the Missouri Department of Corrections ("MDOC") for visitors logs, (16) failed to subpoena MDOC for deposits to inmate accounts; (17) failed to subpoena Ms. Coleman's son and his girlfriend regarding funds; (18) failed to move to exclude movant's recorded telephone calls from jail; (19) failed to include portions of telephone conversations that movant's wife wanted guns out of the house; (20) failed to impeach Ms. Coleman with telephone records and jail visitation logs; (21) failed to impeach Ms. Coleman and Mr. Briskey about their memories; (22) failed to impeach agents and officers to demonstrate that they had coached Ms. Coleman, Mr. Briskey, and Mr. Kempker; (23) failed to seek dismissal of the indictment because the agents did not make recordings or notes of their interviews; (24) failed to seek the exclusion of Ms. Coleman's testimony on the

basis that it was not reliable or credible; (25) failed to seek the exclusion of Mr. Mueller's confession; (26) did not request a jury instruction informing jurors that they could not base guilt on movant's failure to establish an alibi; (27) failed to demonstrate to the jury the "total absence" of any communication between Ms. Coleman and movant; (28) failed to move for dismissal based on statute of limitations; (29) did not challenge the admissibility of expert testimony regarding the fingerprint evidence; (30) failed to object to or request a mistrial when the prosecutors argued in closing argument that Mr. Coleman was killed due to a bullet wound; (31) did not seek jury instruction regarding statute of limitations; (32) did not challenge the validity of the 2008 indictment; (33) did not engage in a plea bargaining session with federal prosecutors; (34) did not demand that there be a hearing to determine the existence of law enforcement notes; and (35) failed to object to the prosecutor's closing argument when the prosecutor directed the jurors' attention to the confession and extra-judicial statements made by Steven Mueller. Id. at 22-39.

Ground Four: Movant was denied his Sixth Amendment right to effective assistance of counsel in that his appellate counsel should have raised the following issues on appeal: (1) fingerprint testimony was incompetent; (2) movant was denied a speedy trial; (3) the indictment failed to allege an offense; (4) the evidence did not support a conviction for mail fraud and/or murder-for-hire; and (5) movant was denied a fair trial when his co-defendant's confession was introduced. Movant also alleges that his appellant counsel was ineffective for failing to seek a petition for rehearing due to the appellate court's erroneous conclusion that movant's "Obstruction of Justice" charge was based on a telephone conversation with Steven Mueller. Id. at 41-2.

Ground Five: Movant was denied due process of law because the evidence was insufficient to support the guilty verdict on the obstruction of justice count.

Ground Six: Movant was denied a fundamentally fair trial when the Court allowed jurors to be exposed to unsworn, extra-judicial statement by movant's co-defendant, Steven Mueller. Id. at 44.

### III. Legal Standard

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255,

the errors of which movant complains must amount to a fundamental miscarriage of justice. <u>Davis v. United States</u>, 417 U.S. 333 (1974); <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962). The Supreme Court has stated that "a collateral challenge may not do service for an appeal." <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982).

### IV. Discussion

### A.    Ground One - Conviction of "Non-Existent Offense"

For his First Ground for relief, movant argues that he was denied due process of law because he was convicted of a "non-existent offense." In his motion, movant acknowledges that he was convicted under 18 U.S.C. § 1958, use of interstate commerce facilities in the commission of murder-for-hire, but he believes that the circumstances of his case are such that he should not have been convicted of that offense.[2] Movant argues that government could not come up with any other

---

[2] (a) Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.

(b) As used in this section and section 1959—

(1)   "anything of pecuniary value" means anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage;

(2)   "facility of interstate or foreign commerce" includes means of transportation and communication; and

(3)   "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States. 18 U.S.C. § 1958 (2004).

charge, so it "was forced to resort to 'mail fraud' as a basis for establishing federal jurisdiction…." under the statute. Doc. 1 at 4-5. But, he contends, the government's theory of mail fraud fails for a number of reasons.

First, movant argues that there was no admissible evidence that life insurance played a role in the murder of Mr. Coleman, and the government failed to establish any connection between the murder and any financial incentive. He points to the fact that Ms. Coleman testified that the reason she wanted her husband dead, was so she could be free from the marriage, and the death of Mr. Coleman was financially disastrous for Ms. Coleman. Thus, according to movant, there could be no mail fraud because there was no financial incentive for the murder. "The collection of life insurance proceeds by Karen Coleman merely facilitated the murder by helping to pay for [Mr. Coleman]'s killing." Id. at 9.

Second, movant argues that he was improperly convicted of this crime because a "sensible reading of [18 U.S.C. § 1958] leads to a conclusion that the 'mail fraud' must precede the murder." Id. at 6. According to movant, it is "patent that the death must result from the fraudulent use of the mail, and not the reverse…. It is the latter that occurred in this homicide, and not the former. Therefore, no violation was chargeable." Id. Movant argues that the use of interstate facilities, including the mail, must occur prior to the actual murder. Id. at 7.

Third, movant asserts that the prosecutors presented no proof that any of the life insurance proceeds were used to pay movant to kill Danny Coleman, or that the "perpetrator, or participants" knew that Ms. Coleman intended to pay the "fee" from life insurance proceeds. Id. at 10. Karen Coleman received the life insurance proceeds about one year after Danny Coleman's death. She did not pay movant until a year after that. Karen Coleman testified that she spent the life insurance

proceeds on numerous things. As a result, "if she did pay a hit-man $15,000.00, then it could not be traced to Danny Coleman's life insurance policy." Id. at 11-12.

### 1. Procedural default

Plaintiff's claim in Ground One is barred for procedural default. If a claim could have been raised on direct appeal but was not, it cannot be raised in a § 2255 motion unless the movant can show both (1) "cause" that excuses the default, and (2) "actual prejudice" resulting from the errors of which he complains. See Frady, 456 U.S. at 168; Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997), cert. denied, 522 U.S. 1064 (1998). If a movant is unable to show "cause" and "actual prejudice," he must make a "substantial claim that constitutional error has caused the conviction of an innocent person . . . ." Schlup v. Delo, 513 U.S. 298, 321 (1995). A claim of actual innocence must be based on "new evidence," and must convince the Court that "it is more likely than not that no reasonable juror would have found [movant] guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. See also Embrey v. Hershberger, 131 F.3d 739, 741 (8th Cir. 1997) (applying Schlup actual innocence standard in the context of a § 2255 motion), cert. denied, 525 U.S. 828 (1998).

"Cause" under the cause and prejudice test "must be something external to the [movant], something that cannot fairly be attributed to him," for example, a showing that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance with the procedural rule impracticable. Stanley v. Lockhart, 941 F.2d 707, 709 (8th Cir. 1991) (citing Coleman v. Thompson, 501 U.S. 722 (1991)); see also Greer v. Minnesota, 493 F.3d 952, 957-58 (8th Cir. 2007). Ineffective assistance of counsel in failing to raise a claim on appeal can amount to cause to lift a procedural bar. Becht v. United States, 403 F.3d 541, 545 (8th Cir.

2005).  The deficient performance, however, must have been so ineffective as to violate the Constitution.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488-89 (1986).

Movant does not make a claim of actual innocence and he has not attempted to show cause for his failure to raise his claim in Ground One, therefore, is it procedurally barred.

### 2.      On the merits

Even if movant's Ground One were not procedurally barred, the claim fails on merits.  The statutory elements of the Count I conspiracy are: (1) an agreement (2) involving the use of the mail or any facility of interstate or foreign commerce (3) with the intent that a murder be committed (4) with the murder being consideration for the receipt of or the promise of something of pecuniary value.  18 U.S.C. § 1958(a). The statutory elements of Count II are essentially the same: (1) a person used the mail or any facility of interstate or foreign commerce (2) with the intent that a murder be committed (3) with the murder being consideration for the receipt of promise of something of pecuniary value.  <u>Id.</u>  In other words, to convict a defendant under § 1958, the government must show that one party agreed to commit a murder in exchange for another party's provision or future promise of payment of anything of pecuniary value, and that the conspiracy utilized a facility in interstate commerce or the mail. <u>United States v. Hyles</u>, 521 F.3d 946, 954-56 (8th Cir. 2008).

Under the statute, there is no requirement that the sole purpose of the murder be to obtain financial gain, but rather, the statute requires that pecuniary gain be given in consideration for the murder. Here, there was testimony that movant, Mr. Nolan and Mr. Kempker received payment for the murder.  Movant's argument that there was no admissible evidence that life insurance "played a role" in the murder of Mr. Coleman is without merit.

Second, movant's argument that under the statute the mail fraud must precede the murder is incorrect. See United States v. Basile, 109 F.3d 1304, 1312-13 (8th Cir. 1997) (finding sufficient to convict a defendant under § 1958 where defendant used the mail to collect proceeds from victim's life insurance to pay for the murder for hire). Moreover, in this case mailings in the furtherance of the murder-for-hire scheme occurred both before and after the murder. Prior to the murder, Ms. Coleman mailed letters to Larry Nolan in which she discussed the scheme. In addition, Karen Coleman testified that it was understood the proceeds from the life insurance policies would be used to pay Larry Nolan and others for their part in killing Danny Coleman. Karen Coleman could not apply for those life insurance proceeds until after the death of Danny Coleman, and the payments from the insurance proceeds continued until 1997. Movant's argument that the use of interstate facilities must occur prior to the murder is not grounded in law or fact.

Third, movant's argument that there was no proof that any of the life insurance proceeds were used to pay movant to kill Danny Coleman is not supported by the evidence. Karen Coleman testified that after she received the life insurance proceeds, she slowly withdrew the money from her account so that it would not be noticeable and, after she had collected enough, she made payment to movant.

Movant's claim in Ground One is procedurally barred. But even if the Court were to address the claim on the merits, movant is not entitled to relief, because it is not legally or factually sound.

**B.      Ground Two - Failure to Call "Key Witness"**

Movant asserts in Ground Two that he is entitled to post-conviction relief because he was denied a fair trial and due process of the law when the government failed to call Michelle Nolan as a witness during the trial.  Movant contends that Michelle Nolan was a key player in the scheme to murder Karen Coleman's husband.  And her testimony would have been particularly crucial with regard to the key to Joe Briskey's house, where the murder took place:

> Other than Steve Mueller's hearsay, the only person in possession of knowledge as to whom [Michelle Nolan] delivered the key to Joe Briskey's house, was Michelle Nolan.  This missing witness was critical to not only solving the mystery as to the missing key, but, in addition, Michelle Nolan possessed crucial information pertaining to other matters which went to the elements of the charged offense.

Doc. 1 at 17.  He points out that there was no testimony as to whom Ms. Nolan gave the key, and the prosecutors expected the jury to speculate that she gave the key to movant or Steven Mueller.

Movant argues that he had no obligation to call Michelle Nolan as a witness, but that the burden was on the government to call her because she was a "crucial witness."  Movant asserts that it was misconduct not to.  Id. at 18.  Movant also notes that Michelle Nolan was given immunity.  "Consequently, no rational justification could have existed for not placing her testimony before the jury." Id. at 18-19.  Movant also argues that the government's failure to call Michelle Nolan entitled movant to a jury instruction authorizing the jurors to draw an unfavorable inference from such failure, that is, that the movant failure to call Michelle Nolan constituted an admission that her testimony would have been unfavorable to the government's theory of how the murder occurred. Id. at 19.

Movant's claim in Ground Two fails on the merits.  To prevail on a claim of prosecutorial misconduct, a party must satisfy both prongs of a two-part test.  Graves v. Ault, 614 F.3d 501, 507 (8th Cir. 2010). First, the party must show that the prosecutor's conduct was improper. Id. Second, the party must show that improper conduct caused the party prejudice by depriving him of a fair trial. Id. A party has been deprived of a fair trial only where the improper conduct could reasonably have affected the jury's verdict. Id. See also Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 2002) (to receive habeas relief, a petitioner "must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different.").  When determining whether a party has been denied a fair trial, a court should consider the cumulative effect of the misconduct, the strength of the properly admitted evidence of the party's guilt, and any curative actions taken by the district court. Graves, 614 F.3d at 507-08.

Movant's claim in Ground Two  fails because movant cannot establish that the prosecutor's behavior was improper.  There is absolutely no requirement, constitutional or otherwise, that compels a prosecutor to call a witness in its case-in-chief, and movant has cited no authority otherwise. The government did not elect to call Michelle Nolan as a witness, which it was its prerogative to do.  Furthermore, movant chose not to call Ms. Nolan as a witness, which he could have done.  But also, there is nothing before the Court as to what Ms. Nolan's testimony would have been had she testified at trial.  Movant supposes that she would been able to testify as to whom she gave the key, whether Ms. Coleman paid for the murder out of insurance proceeds, whether her brother was out of town on the day of the murder, and whether she cleaned up after the murder.

Movant claims Ms. Nolan would have provided relevant testimony, but there is nothing to indicate that the testimony would have been favorable to movant.

Movant has not established that it was prosecutorial misconduct not to call Michelle Nolan as a witness. The government was under no obligation to do so, and in any event, there is nothing before the Court that would indicate that the absence of her testimony caused movant prejudice or that the outcome of the trial would have been different. Movant's claim in Ground Two is without merit.

### C. Ground Three - Ineffective Assistance of Trial Counsel

In Ground Three, movant raises thirty-five different grounds upon which he contends he received ineffective assistance of counsel that rises to the level of a constitutional violation. To prevail on an ineffective assistance of trial counsel claim, movant must show that his counsel's performance was deficient and that he was prejudiced by the deficient performance. See McReynolds v. Kemna, 208 F.3d 721, 722 (8th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "Counsel's performance was deficient if it fell outside the wide range of professionally competent assistance." McReynolds, 208 F.3d at 723 (internal quotations and citations omitted). Prejudice is shown if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To establish ineffective assistance of counsel, under the first prong a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. When evaluating counsel's performance, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Even if there

is sufficient proof that the first prong exits, relief is warranted only if a movant also establishes that counsel's deficient performance prejudiced the case. Id. at 697. A court may address the two prongs in any order, and if the movant fails to make a sufficient showing of one prong, the court need not address the other prong. Strickland, 466 U.S. at 697; Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000).

### 1. Failure to Object to Hearsay Testimony

As his first claim of ineffective assistance of counsel in Ground Two movant asserts that his trial counsel was ineffective for failing to object "to the numerous instances of hearsay testimony which came in, during the jury trial, and relied upon to connect him to the murder plot, and to establish federal jurisdiction." Doc. 1 at 22. Movant does not specify which instances of hearsay testimony he is referring. Conclusory allegations, such as movant's, are insufficient to support a claim for ineffective assistance of counsel. Bryson v. United States, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance); Estes v. United States, 883 F.2d 645, 647 (8th Cir. 1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence).

In its response memorandum, the government supposes that movant is complaining about the testimony of Michael Kempker and Karen Coleman, both of whom testified as to various things Larry Nolan told them. Movant may also be referring to the statements made by Steven Mueller.

First, movant's counsel did object to this testimony. A week prior to trial, movant's counsel filed a Motion in Limine to Exclude Hearsay Statements. United States v. Kornhardt, 4:08-CR-701 CAS, Doc. 236. In that motion, defense counsel specifically moved to exclude "[a]ny and all statements by Larry Nolan, a deceased former inmate of the Missouri Department of Corrections,

including any statements to any individuals at or around the time of his death purporting to confess his involvement in the murder of Danny Coleman." Id. at 1. In that same motion, counsel moved to exclude any and all statements of "any witness who will not be testifying and subject to cross-examination" and any and all statements of "Steve Mueller implicating Defendant Kornhardt in any criminal activity." Id. at 1-2.

> In his Memorandum in Support, movant's counsel argued:
>
> Larry Nolan's statements pose a particular difficulty because he is alleged to have made several classes of potential hearsay statements during this investigation: 1) confessions allegedly made because he wanted to clear his conscience about the murder and because he was angry that he had not been paid in full for his involvement in the conspiracy; 2) gratuitous statements of involvement in the conspiracy, not in furtherance of the conspiracy; 3) co-conspirator's statements; and 4) statements that are part of the alleged offense itself.

Id. at 2. The government opposed movant's motion, and the undersigned held a pre-trial hearing on June 3, 2010, at which time the parties were giving an opportunity to argue the motion. Furthermore, on the first day of trial, before voir dire, the Court heard additional argument on movant's motion to exclude this hearsay testimony. The Court ruled the testimony admissible at trial as statements of co-conspirators. Tr. Trans. Vol. 1 at 3-7. But movant's counsel continued to object to the testimony throughout the course of the trial.

In light of the fact that his counsel did object to the testimony, movant neither establish his counsel's performance was deficient, nor can he show prejudice. But even assuming counsel failed to make objections to the testimony, movant would be unable to establish prejudice because his counsel would not have prevailed on such an objection. Under Federal Rule of Evidence 801, "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E); United States v. Spotted Elk, 548 F.3d 641, 660-661 (8th

Cir. 2008).  Plaintiff's claim of ineffective assistance of counsel based on an alleged failure to object to supposed hearsay testimony is without merit.

### 2.  Failure to Protest the Absence of Corroborative Proof

Movant asserts in Ground Two that his attorneys were ineffective because they "did not protest the absence of clearly available corroborative proof, if it existed, which should have been presented by the prosecutors to support the testimony of government witnesses pertaining to telephone calls having been actually made; to prison visits; to bank account withdrawals; and to correspondence."   Doc. 1 at 22.  Again, movant's claim is conclusory and it will be dismissed on this basis.  Bryson, 268 F.3d at 562; Estes, 883 F.2d at 647.  But even if the Court were to review the claim on the merits, it would be dismissed because it is not supported by the record.

Movant is incorrect that his counsel failed to "protest" the lack of corroborating evidence. The Court has reviewed the trial transcript, and there were a number of times that defense counsel made the point that the testimony of government witnesses were not corroborated by documents. For example, while cross-examining Michael Kempker, defense counsel established that there would have been a visitors log kept by the prison.  Tr. Trans. Vol. III-A at 7.  Counsel established again with Ms. Kempker at a later time that, with respect to the meetings to which he testified, there would have been jail records documenting all these meetings, but documents with respect to these meeting were not introduced because they could not be located.  Id. at 40.

When defense counsel cross-examined Karen Coleman, he established that, although she claimed to have mailed Larry Nolan numerous letters, she did not have one letter to corroborate her testimony.  Tr. Trans. Vol. III-B at 61.  In addition, although Karen Coleman testified she had called movant several times from her cell "bag" phone, she did not have one document from the phone

company to show these phones calls were actually made.  Id. at 62.  Karen Coleman testified that she wrote movant various phone numbers down in the back of one of her check registers.  Defense counsel established that she kept every one of her check registers except for the one which would have corroborated her testimony.  Id. at 88.

During defendant counsel's cross-examination of Agent Tad Heitzler, defense counsel established, among other things, that: (1) Agent Heitzler had no actual letters between Karen Coleman and Larry Nolan regarding her agreement to have Danny Coleman killed; (2) Agent Heitzler was not able to find any cell phone records that corroborated Karen Coleman's contention that she called movant; (3) Karen Coleman was never able to locate the purported audiotape of her meeting with movant; and (4) Agent Heitzler had no bank records from movant to show he had deposited any large sums of money into his bank accounts. Tr. Tran. Vol. IV at 183-6.

In his closing argument, movant's counsel emphasized that there was no corroborating proof. He stated that although Michael Kempker talked about visitation records, there were no visitation records corroborating the meetings about which he had testified. Tr. Trans. Vol. VI, p. 81-82.  With respect to Karen Coleman's testimony, movant's counsel argued:

> And nothing interestingly enough can be corroborated, not one word of what she said.  She talks about what?  She talks about all these letters.  Letters on top of letters on top of letters talking about the doctor.  Conveniently burned.  She talks about, well, I jotted down the numbers on the back of potentially a check register.  Not there.  She talked about this story where she and Michelle Nolan heard that a tape recording of her implicating her was buried over on Tennessee.  Led the detectives to it.  Not there.  Talked about a cell phone.  Not there.  Visiting records.  Nothing is corroborated.

Id. at 92.

Contrary to movant's assertion, the record demonstrates that movant's counsel did "protest" the lack of corroborating evidence during his trial.  Defense counsel's performance was not

constitutionally deficient in this regard, and movant cannot establish prejudice. This claim is without merit.

### 3. Failure to Provide Alibi Defense

Movant asserts in Ground Two that his attorneys were ineffective in that they "did not conduct themselves in accordance with the norms of their profession when no effort was made to present an alibi defense for James Kornhardt." Doc. 1 at 8. Movant has presented no facts to support this claim and, therefore, it will be denied.

In order to evaluate whether defense counsel was deficient in failing to present alibi evidence at trial, movant must establish that he had an alibi, and what the evidence would be in support of that alibi. Movant fails to inform this Court what his alibi was, or point to any evidence or facts in support of his alibi defense. In light of this, it is impossible to assess the validity of movant's claim. The burden is upon movant in a § 2255 proceeding to establish that he is entitled to relief. Strickland, 466 U.S. at 687-88 (the burden is on the prisoner to prove, by a preponderance of the evidence, that counsel's performance was unreasonable). Movant fails to carry his burden on this claim. Mere conclusory allegations are insufficient to support a claim for ineffective assistance of counsel. Bryson, 268 F.3d at 562; Estes, 883 F.2d at 647. Because movant failed to reveal his purported alibi, movant has not met his burden and shown that "there is a reasonable probability that, had his trial counsel pursued the alibi defense, he would have been acquitted." Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992). See also Williams v. United States, 452 F.3d 1009, 1014 (8th Cir. 2006). This claim is denied.

### 4.    Good Character and Reputation

Next, movant argues in Ground Three that his trial counsel was ineffective for failing "to introduce evidence of the [movant]'s good character and reputation in the community, which created reasonable doubt." Doc. 1 at 22-23.  In his motion, movant does not explain what evidence there was of his good character and reputation in the community that should have been introduced. Movant does attach three letters to his motion.  One, which is dated October 17, 2012,  is a letter from his former neighbor, Maxine M. Nevels.  The letter from Ms. Nevels describes movant as a parent. The second letter, which is undated, is from his sister-in-law, Tina M. Huskey. The letter from Ms. Huskey describes the close relationship she has had with movant since 1986.  She describes family holidays and thoughtful deeds movant has done, such as buying her a set of tires when she could not afford them.  The third letter, which is dated November 15, 2012, is from movant's former work colleague, Dave Andrews.  The letter from Mr. Andrews describes movant's personal contributions at work, such as working longer shifts to help another firefighter who had suffered an off duty injury.

"The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy." United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (internal marks and cited cases omitted). See also Bowman v. Gammon, 85 F.3d 1339, 1345 (8th Cir. 1996) (noting that under Strickland, "decisions related to trial strategy are virtually unchallengeable"). "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the [proceeding].'" Hadley v. Groose, 97 F.3d 1131, 1135 (8th Cir. 1996) (quoting Stewart v. Nix, 31 F.3d 741, 744 (8th Cir. 1994)).

As an initial matter, the Court finds movant has not established that Ms. Nevels, Ms. Huskey and Mr. Andrews were available and willing to testify on movant's behalf at the time of trial. The letters are dated in 2012, if at all, and there is nothing in the letters regarding the individuals' willingness and availability to testify in June 2010. Also, movant does not state that he brought these potential witnesses to the attention of his counsel.

But even if the Court were to find that counsel's failure to call these three individuals as witnesses was constitutionally deficient performance, movant cannot establish prejudice because he cannot show that the outcome of the trial would have been different had they testified. <u>Hadley</u>, 97 F.3d at 1135. First, had his counsel introduced evidence of movant's good character, the government would have been free to challenge that evidence with specific evidence of other incidents of movant's misconduct. Fed. R .Evid. 404(a); <u>United States v. Grady</u>, 665 F.2d 831, 834-35 (8th Cir. 1981). Second, character witnesses would not have provided evidence to disprove the strong evidence of movant's guilt. Thus, movant is unable to show that the outcome of his trial proceedings would have been different had his counsel called these witnesses to testify. <u>See Girtman v. Lockhart</u>, 942 F.2d 468, 472 (8th Cir. 1991); <u>United States v. Pungitore</u>, 15 F. Supp. 2d 705, 729 (E.D.Pa. 1998) (in view of the evidence against the defendant, trial counsel's failure to call character witnesses would have scarcely made a difference); <u>Cohen v. United States</u>, 996 F. Supp. 110, 114 (D. Mass. 1998) (trial counsel's failure to interview potential character witnesses was not ineffective assistance where counsel was "faced with an abundance of physical and testimonial evidence that clearly implicated the defendant in the charged offense."). This claim is without merit.

## 5.    Failure to Prepare Movant to Testify

Movant also claims in Ground Three that he received ineffective assistance of trial counsel because his attorneys did not prepare him to testify in his own behalf.  Doc. 1 at 23.  Movant, however, did not testify at trial.  Movant, presumably, does not object deficiencies in preparing him to testify, but rather to the fact that he was not called as a witness.

During the trial, defense counsel asked the Court to make a record regarding movant's decision not to testify.  Mr. Rosenblum stated:

> We are now in our case and this case has been going on for quite a while.  During the course of that time I brought up the subject of whether or not Mr. Kornhardt wants to testify when he has an opportunity in this case.  I've explained to Mr. Kornhardt … that it's absolutely his decision.  And the one thing he has an absolute right to is to stand trial, and in the event he elects to go to trial, he has an absolute right to testify and nobody, including me, can prevent that.
>
> I have discussed with him what my recommendations are and my recommendation in this case, given that I think it would present the opportunity for the government potentially to call rebuttal witnesses, potentially to cross-examine him with other tapes that they have access to with respect to phone calls made from jail.  There's also the possibility that other misconduct on behalf of Mr. Kornhardt could be raised if he would elect to testify. And given all those considerations, it is my recommendation and merely a recommendation that he elects to stand on his Fifth Amendment rights and not to testify.

Tr. Vol. V at  65-66.  Movant then informed the Court that he made the decision not to testify.  Id. at 66.  During this exchange, movant did not express to the Court that he wished to testify, but he was not properly prepared.  Movant definitely stated that he did not wish to testify.

But even if movant would have testified had he been properly prepared, movant cannot meet the "prejudice" prong of the Strickland analysis.  He cannot establish that the outcome of his trial would have been different had he testified.  In his motion and supporting documents, movant has not shown what his testimony would have been had he testified.  Without this information, it is

impossible for the Court to assess the impact his testimony would have had on the verdict. What is more, had movant testified, he would have been subject to cross-examination by the government. In assessing the effect movant's proposed testimony would have had on the verdict, the Court must consider not just direct examination, but also the effect of cross-examination. During trial, defense counsel represented to the Court that it was his recommendation that movant not testify because the government had ample material for cross-examination. Movant has not established the "prejudice" prong of his ineffective assistance of counsel claim based on supposed deficiencies in preparing him to testify.

### 6.     Fingerprint Expert

Movant also claims in Ground Three that his trial counsel was ineffective for failing to use a fingerprint expert to counter the fingerprint evidence offered by the government's witness. After reviewing the claim, the Court finds it is without merit.

Movant cannot show that his counsel's performance was constitutionally defective for failing to call a fingerprint expert. Prior to trial, defense counsel did employ a fingerprint expert to examine the fingerprint. The defense hired Donald Brian, who was the supervisor of the St. Louis County Police Department latent fingerprint unit. In fact, Mr. Brian trained Donna Knight, the government's witness. Mr. Brian reviewed the fingerprint on the box of matches and he concluded that the print belonged to movant. It would not have benefitted movant's case for his counsel to have called Mr. Brian to testify.

Moreover, movant's counsel did object to the fingerprint evidence. He filed a 32-page motion in limine seeking to exclude latent fingerprint evidence at trial. United States v. Kornhardt, 4:08-CR-701 CAS, Doc. 231. In the motion, movant's counsel argued, based on a 2009 National

Research Council's report, that the science behind latent fingerprint analysis was flawed and did not meet the standards of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993). The motion was well researched and very thorough. The government opposed the motion, and the parties argued the motion at a pre-trial hearing, but the motion in limine was denied.

Furthermore, movant's counsel effectively cross-examined the government's fingerprint expert at trial. He was able to establish that there were two prints on the box of matches, one of which was unidentifiable. The government's fingerprint expert testified that she could not determine which print was placed on the box last, or when either print was placed on the matches. Tr. Trans. Vol. III-A, at 100-105. That said, the fingerprint evidence in this case was strong. The government's expert, Donna Knight, had thirty years of latent print experience and had reviewed thousands of prints a year. Id. 81-86. She testified that if one can make eight points of comparison between two prints, then one can conclude the two prints belong to the same person. Id. In this case, the fingerprint left on the matches had 18 points of comparison with movant's thumb print, more than double the amount necessary to establish a complete unity of relationship. Id.

Movant cannot show his counsel's performance was defective with regard to the fingerprint evidence. What is more, movant has not established prejudice. Movant has not shown that another latent print examiner would find that the print on the box of matches does not match movant's thumb print. In other words, movant cannot establish that the outcome of his criminal proceedings would have been different had his counsel called a different fingerprint expert as a witness at trial.

### 7. Life Insurance Proceeds

In Ground Three  movant also faults his counsel for failing to "object to testimony concerning applications for life insurance proceeds, or, the procedures employed to collect on the same." Doc. 1 at 23.  The Court has carefully reviewed movant's Motion to Vacate and finds that movant does not adequately explain the basis of this claim.  As state above, conclusory allegations without adequate explanation and support are insufficient to support a claim for ineffective assistance of counsel.  Bryson v. United States, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance); Estes v. United States, 883 F.2d 645, 647 (8th Cir. 1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence).

At trial, testimony regarding life insurance proceeds came from Karen Coleman. Ms. Coleman testified that she discussed life insurance with Larry Nolan when she was discussing having her husband killed.  According to Ms. Coleman, Mr. Nolan wanted to know how much life insurance she had.  Ms. Coleman testified that the life insurance proceeds were to be used to pay Mr. Nolan's lawyer and to pay movant $15,000.  Tr. Trans. Vol. III-B, p. 8-9.  She further testified that after her husband was killed, she took steps to collect the insurance, and at Mr. Nolan's instruction, she made incremental withdrawals from the proceeds to pay movant.  Id. at 16.  After her testimony, Government's Exhibit ST-2 was read to the jury:

> The United States of America and defendants James K. Kornhardt and Steven A. Mueller agree and accept the following facts in this case to be proven. On or about February 4, 1993, Multiplex Company, Inc. made payment to Karen K. Coleman via check number 82513 in the amount of $11,039.94. On or about June 22,1993, General American made payment to the registry of the Circuit Court of the City of St. Louis via check number O535750 in the amount of $51,982. On or about October 6, 1993, attorney John L. Boeger made payment to Karen K. Coleman via check number 3622 in the amount of $45,836.63. On or about May 19, 1997, Liberty Life

> Insurance Company made payment to First Nationwide Mortgage Corporation via check number 51O974O7 in the amount of $25,060.19. On or about July 14, 1997, Liberty Life Insurance Company made payment to Karen K. Coleman via check number 51105560 in the amount of $3,759.03. On or about July 15, 1997, First Nationwide Mortgage Corporation made payment to Karen K. Coleman via check number 857465357 in the amount of $10,762.33. Each of these payments was made using the United States mail and/or a facility of interstate or foreign commerce.

Tr. Trans. Vol. IV, p. 4-5.

In his motion and supporting documents movant does not explain the grounds upon which his counsel should have objected to this evidence. Movant also does not address the likelihood his counsel would have succeeded had he made such an objection, or how movant was prejudiced. In short, movant has not established constitutionally defective performance or prejudice with regard to the admission of evidence related to the life insurance proceeds. The claim is without merit.

### 8.    Failure to Educate the Court

In Ground Three movant further claims that his counsel was ineffective for failing "to properly address and educate the Court on the elements required for conviction under 18 U.S.C. § 1958, as it pertains to mail fraud in a murder-for-hire plot." Doc. 1 at 23. Again, movant's motion is short on explanation, and will be denied as conclusory. Bryson, 268 F.3d at 562; Estes, 883 F.2d at 647. But in any event, the record does not support movant's claim.

First, movant cannot establish that his counsel's performance was deficient in this regard. Movant's counsel filed several motions to dismiss the indictment. United States v. Kornhardt, 4:08-CR-701 CAS, Docs. 86, 95, 96. In his first motion, movant's counsel asserted that neither Count I nor II of the indictment alleged an offense that involved the actual use of an interstate commerce facility. Doc. 86. In his second motion, movant's counsel argued that the indictment violated the statute of limitations. Doc. 95. In the third motion to dismiss, movant's counsel argued that as a

matter of logic the offense charged in Count I of the Superseding Indictment could only have occurred prior to Danny Coleman's death on October 22, 1992. At the time of Danny Coleman's death, however, and for the first four years of the conspiracy alleged in the indictment, 18 U.S.C. § 1958(a) did not prohibit conspiracy to commit murder for hire and, therefore, Count I failed to state a claim. Doc. 96. It is clear from the record, that movant's counsel had an understanding of 18 U.S.C. § 1958, and he made a number of arguments attempting to "educate" the court on the elements required for conviction under the statute. In his motion and supporting documents movant does not explain what more his counsel could have done.

Second, movant cannot establish prejudice. Movant has not explained to the Court how its rulings would have been different had his counsel "properly addressed" and "educated" the Court on the elements of 18 U.S.C. § 1958. Movant's claim is without merit.

### 9. Failure to Subpoena Bank Officials to Testify

In Ground Three movant also claims his trial counsel was ineffective because he "failed to subpoena bank officials to testify concerning Karen Coleman's checking account." Doc. 1 at 23. As with most of his claims, movant fails to substantiate this claim. Movant does not explain what testimony a bank official would have offered regarding Karen Coleman's checking account, and how it would have changed the outcome of the trial. Without this information, the Court cannot evaluate movant's claim. Movant's allegations are conclusory and insufficient to establish grounds for relief. Bryson, 268 F.3d at 562; Estes, 883 F.2d at 647.

### 10. Failure to Develop Alternative Theory as Defense Strategy

Movant next claims in Ground Three that his counsel was ineffective for failing to "develop a defense strategy demonstrating that others, e.g., the 'Hells Angels,' were culpable for the death

of Danny Coleman." Doc. 1 at 23. Movant's claim fails because defense counsel did attempt to establish at trial that others were culpable for the death of Danny Coleman, and movant does not explain in his motion or supporting documents what more his counsel could have done.

In defense counsel's opening statement, counsel laid the groundwork to establish that Joe Briskey was Larry Nolan's "go-to guy." He stated "[Karen Coleman has been] involved for years in the methamphetamine distribution at Larry Nolan's behest, with his go-to men, the Hells Angels and Joe Briskey, who the evidence will show at the time of Danny Coleman's murder was the person that had most access to Larry Nolan." Tr. Trans. Vol. II, p. 41. During cross-examination of Michael Kempker, counsel established that at the end of Larry Nolan's life, the only person who was there for him and consistently visiting him was Joe Briskey. Tr. Trans. Vol. IIII-A, p. 29. When cross-examining Karen Coleman, counsel established that Joe Briskey was the person on the "outside" who was very close to Larry Nolan. Tr. Trans. Vol. III-B, p. 104. Counsel also established that Karen Coleman was involved with Nolan's other "go-to men," Carasis and Bruno, who were members of the Hells Angels. Id. at 111-12. Counsel further attempted to established that, out of all of Larry Nolan's associates, Joe Briskey had the most contact with Larry Nolan around the time and immediately after Danny Coleman's death. Id. at 113.

Joe Briskey provided an alibi for the time of the murder, stating he was out of town from October 21 to 23, 1992, on business for his company. Tr. Trans. Vol. IV, p. 18. On cross-examination, however, defense counsel established that the company Mr. Briskey worked for in 1992 was still in business, and Mr. Briskey actually had no proof that he was out of the area at the time of the murder. Id. at 69. During cross-examination of Agent Heistzler, movant's counsel established that at no point did the agent try to subpoena work records to show Mr. Briskey was

actually on a sales call outside the City of St. Louis on the day of the murder.  Id. at 214.  In addition, while cross-examining Mr. Briskey, movant's counsel established that the witness had visited Larry Nolan at least 36 times in prison, and he considered himself to be close to Larry Nolan.  Tr. Trans. Vol. IV, p. 24-25.

In his closing argument, movant's counsel argued that if Larry Nolan wanted someone to get involved in a murder for hire, he would to go to his Hells Angels buddies, Tom Bruno and Art Carasis, and Joe Briskey, who had the most contact with Larry Nolan at the time of Danny Coleman's death.  Tr. Trans. Vol. VI, p. 83.  More specifically, defense counsel argued:

> And why is this guy [Joe Briskey] worried? Think about it.  Closest person to Larry Nolan at the time of Danny Coleman's death.  When he's first talked to by agents, he cannot account for whether or not he was in St. Louis.  And with all their investigation, with the business still in business there in Ladue, does anybody go check the records to see if Joe Briskey was, in fact, in St. Louis?

> Of course he's got concerns.  He does drugs with Karen Coleman and did drugs with Larry Nolan.  He sells drugs for Larry Nolan with his sister Michelle Nolan and with Karen Coleman.  And he's involved in a conspiracy with methamphetamine with Larry Nolan, Karen Coleman, and two Hells Angels, and he can't account for his time.  You don't think that guy's got something to worry about.

Tr. Trans. Vol. VI, p. 95.

It is clear to the Court that movant's counsel was attempting to establish that Joe Briskey, with the assistance of Bruno and Carasis, was responsible for Coleman's death, not movant.  As defense counsel did engage in the conduct movant claims he should have, movant cannot establish that his counsel provided constitutionally infirm representation. Further, movant cannot establish prejudice.  He has not shown what other evidence or arguments his counsel should have made to place blame on another  person, and movant has not shown how the outcome of his trial would have been different.  The claim is without merit.

### 11. Failure to Establish Someone Other than Movant was Responsible

Similar to the previous claim, movant also argues in Ground Three that his counsel was ineffective for failing to "introduce evidence, gathered by various law enforcement agencies/departments, that indicated someone other than the movant was responsible for the murder of Danny Coleman." Doc. 1 at 23. As the government points out, this is essentially a duplicate of the previous claim of ineffective assistance of trial counsel and, to the extent it overlaps, it is denied for the reasons stated above.

To the extent movant is arguing that his attorney failed to introduce evidence gathered by law enforcement showing someone other than movant was responsible for Danny Coleman's murder, movant's claim fails because he has not described what that evidence is. There is nothing in the record before the Court indicating that law enforcement had evidence showing that someone other than those parties identified at trial were responsible for the murder. Movant carries the burden of proving his claims in a post-conviction proceeding. Strickland, 466 U.S. at 687. He has failed to provide this Court with any evidence or explanation to support this claim. The claim is denied.

### 12. Failure to Subpoena Joe Briskey's Employer

Movant further claims in Ground Three that his trial counsel was ineffective for failing "to subpoena the employer of Joe Briskey, and demonstrate that he was not out-of-town at the time of Danny Coleman's murder." Doc. 1 at 23. As discussed above, movant's counsel attempted to create reasonable doubt by offering evidence to support the theory that Joe Briskey was hired for the murder, which took place at his house. At trial, Mr. Briskey testified that he was out of town on business on the date of the murder. Defense counsel, however, did not subpoena Joe Briskey's employer in order to obtain documents that could have demonstrated that Briskey was not out of

town at the time of Danny Coleman's murder. That said, counsel's decision in this regard was not constitutionally defective. Had defense counsel called Briskey's employer and learned that Briskey was in fact out of town for a business trip on the date of the murder, defense counsel's theory of defense would have been damaged. Defense counsel's decision not to subpoena Joe Briskey's employer was likely one of trial strategy. Issues of trial strategy are virtually unassailable in a post-conviction proceeding. Rice, 449 F.3d at 897.

Moreover, there is nothing in the record to indicate that the company maintained employment records back to the date of the murder, or that there existed documents showing that Joe Briskey had not left town. In short, movant has not established that the outcome of the trial would have been different had his counsel subpoenaed Joe Briskey's employer. The claim is denied.

### 13. Failure to Subpoena Witnesses

Next movant argues in Ground Three that his counsel was ineffective because he "failed to subpoena witnesses who would have demonstrated that Danny Coleman told them his plans for the evening when he was murdered." Doc. 1 at 23-4. Again, movant's claim will be denied because he has provided no information or explanation to support this claim. Movant does not identify who those witnesses would be, what they would have said, or even what Danny Coleman's plans purportedly were for the evening he was murdered, and why those plans would have been probative at trial. Without this information, the Court cannot assess counsel's performance with respect to this issue. The movant in a § 2255 action has the burden to establish that he is entitled to relief, and conclusory allegations of ineffective assistance are insufficient. Strickland, 466 U.S. at 687-88; Bryson v. United States, 268 F.3d 560, 562 (8th Cir. 2001). This claim is denied.

### 14. Failure to Subpoena the Son of Danny Coleman

Movant also claims in Ground Three that his counsel was ineffective in that he should have subpoenaed the son of Danny Coleman, who would have testified as to his father's plans on the evening of the murder. Doc. 1 at 24. Once again movant does not describe what Danny Coleman's plans were and why this information, had it been presented to the jury, would have had any effect on the jury's verdict. The claim is denied.

### 15. Visitors Logs

Movant further asserts in Ground Three that his trial counsel was ineffective when he failed to subpoena officials from MDOC to "demonstrate that the visitors' logs from the institution where Larry Nolan and Michael Kempker were incarcerated did not support the respective trial testimony of Karen Coleman and Michael Kempker concerning prison visits by Karen Coleman, James Kornhardt, Michelle Nolan, and the father of Michael Kempker." Doc. 1 at 24. Movant's claim fails because it is not supported by the facts. The government did subpoena these records and it provided them to defense counsel during discovery. There would be no reason for movant's counsel to have subpoenaed records that were already produced.

The government in its response states that the prison records were incomplete and worked to neither party's advantage in most instances, including the ability to verify the meeting between movant and the Kempkers. The prisoner logs did, however, aid in movant's defense. Movant's counsel used the logs to verify that Joe Briskey had visited Larry Nolan at least 36 times while Mr. Nolan was in the prison.

Movant's claim fails because movant's counsel already had access to the prison visitors logs. Counsel was not constitutionally ineffective for failing to subpoena them himself. Moreover,

movant cannot establish that the outcome of his criminal proceedings would have been different had his counsel subpoenaed records he already had. The claim is without merit.

### 16. Deposits of Inmate Accounts and Prison Telephone Records

Movant also claims in Ground Three that he was subjected to ineffective assistance of trial counsel because his counsel "did not subpoena officials from [MDOC] to testify concerning deposits to the inmate accounts of Larry Nolan and Michael Kempker, and concerning telephone records of calls made by Larry Nolan and Michael Kempker." Doc. 1 at 24.

Movant fails to establish that his attorney's performance was constitutionally infirm in this regard. At trial, the government called Rodney Kueffer, the finance officer for MDOC, to testify regarding Larry Nolan's prison account. Mr. Kueffer was asked to review Larry Nolan's inmate accounts specifically for deposits made by movant, Karen Coleman, or Alfred or Bonita Kempker. Mr. Kueffer provided testimony regarding the amounts each of these individuals paid into Larry Nolan's account. Tr. Trans. Vol. III-A, p. 55-62.

On cross-examination, defense counsel established that Larry Nolan was selling leather goods to Alfred Kempker, which could explain the money paid by him into Larry Nolan' account. Defense counsel further established that the witness had no knowledge as to why these people contributed the amounts they did. Moreover, there was evidence that movant paid $827 into Larry Nolan's account, but defense counsel was able to establish that it was deposited over a period of more than five years and it was not an unusually high amount for a friend to contribute. Id. at 63-66.

The Court concludes, therefore, that defense counsel was not ineffective for failing to call an officer from the MDOC to testify concerning the deposits to Larry Nolan' account because the government had already called the witness and defense counsel had ample opportunity to

cross-examine the witness in an effective manner. Moreover, movant has not explained how he was prejudiced by this decision. Movant fails to explain what another MDOC witness would have testified to, and how that testimony would have altered the outcome of his trial proceedings.

A MDOC witness did not testify regrading funds or deposits into Michael Kempker's prison account, or concerning telephone records of calls made by Larry Nolan and Michael Kempker. That said, movant fails to explain in his motion what testimony a prison official would have offered with respect to Mr. Kempker's account or the telephone records, and how this evidence would have been beneficial to movant's case. Movant bears the burden of establishing that he is entitled to relief under § 2255, and conclusory allegations of ineffective assistance are insufficient. Strickland, 466 U.S. at 687-88; Bryson v. United States, 268 F.3d 560, 562 (8th Cir. 2001). The claim is without merit.

### 17.     Failure to Subpoena Karen Coleman's Son Regarding Bank Funds

Movant next argues in Ground Three that his trial counsel was ineffective for failing to subpoena Karen Coleman's son and his girlfriend Dawn to testify "concerning the funds which Karen Coleman allegedly withdrew from her bank account and kept in a drawer at the house, and which Karen Coleman invaded to remodel bedrooms, purchase cars, pay taxes and insurance, and make loans to friends or gifts to acquaintances." Doc. 1 at 24.

Movant's claim fails because he does not explain what testimony he expects Joby Coleman would have given at trial regarding the "funds" Karen Coleman kept at the house and the purpose for which she kept the "funds." Movant also does not explain the supposed source of the "funds," and the relevance of the purchases Ms. Coleman allegedly made. Without such an explanation, movant cannot carry his burden of establishing that he received constitutionally infirm

representation. <u>Strickland</u>, 466 U.S. at 694. Without information as to what their testimony would have been, the Court is not able to assess how the outcome of movant's trial would have been different had his counsel called Joby Coleman or his girlfriend as witnesses. In addition, movant has not shown that Joby Coleman and his girlfriend were available and willing to testify.

"The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy." <u>United States v. Staples</u>, 410 F.3d 484, 488 (8th Cir. 2005) (internal marks and cited cases omitted). <u>See</u> <u>also</u> <u>Bowman v. Gammon</u>, 85 F.3d 1339, 1345 (8th Cir. 1996) (noting that under <u>Strickland</u>, "decisions related to trial strategy are virtually unchallengeable"). "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the [proceeding].'" <u>Hadley v. Groose</u>, 97 F.3d 1131, 1135 (8th Cir. 1996) (quoting <u>Stewart v. Nix</u>, 31 F.3d 741, 744 (8th Cir. 1994)). Movant has failed to establish this claim.

### 18. Failure to Exclude Recorded Jail Calls

In Ground Three movant further contends that his trial counsel committed a "procedural error" because he made "no attempt to have [movant]'s recorded jail telephone calls to his wife excluded on the basis that the audio recordings were obtained from the jail without a valid Search Warrant or subpoena." Doc. 1 at 24-5. Movant is unable to establish either the "performance" prong of the <u>Strickland</u> analysis or prejudice.

First, contrary to movant's assertion, his trial counsel did attempt to exclude the recorded jailhouse calls. Movant's counsel filed a motion in limine and argued that the recordings were not relevant or admissible under Rules 401 and 402 of the Federal Rules of Evidence. <u>United States v.</u>

Kornhardt, 4:08-CR-701 CAS, Doc. 250. Movant's counsel also argued that some of the recordings were unduly prejudicial to movant under Rule 403. Id.

Movant's counsel did not argue in the motion in limine that the evidence should be excluded because the recordings were obtained without a search warrant or subpoena. But movant's counsel was not deficient for failing to do so. Under the law, the government is not required to obtain a search warrant for the jailhouse recordings. Search warrants are necessary when the government is attempting to invade areas in which a defendant has a reasonable expectation of privacy, and there is no expectation of privacy when talking on a jail telephone. Lanza v. New York, 370 U.S. 139, 143 (1962) ("(I)t is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day."); see also Thornburgh v. Abbott, 490 U.S. 401, 410, fn.9 (1989)(any "attempt to forge separate standards for cases implicating the rights of outsiders is out of step with the intervening decisions in [our cases]."). Had movant's counsel moved to exclude the jailhouse recordings based on the absence of a search warrant or subpoena, his motion would have been denied. Accordingly, movant cannot meet the performance prong of Strickland, and he cannot show prejudice. Strickland, 466 U.S. at 697 (1984). The claim is without merit.

### 19.    Rule of Completeness

In Ground Three movant also asserts that his trial counsel was ineffective for failing "to insist that the rule of completeness be enforced by insuring that all of [movant]'s aforesaid telephone conversation, in which his wife told him that she wanted all of the guns out of the house, was introduced into the record." Doc. 1 at 25. According to movant, "this inflicted unfair prejudice on

the [movant] because the portion played to jurors reflected that the [movant] was acting for purposes of obstructing justice instead of obeying his wife's demand." Id.

As noted above, movant's trial counsel filed a motion to exclude the jailhouse records in their entirety. United States v. Kornhardt, 4:08-CR-701 CAS, Doc. 250. In the alternative, he requested that the jailhouse recordings be redacted. Movant's counsel argued that the recorded phone calls of movant with his family "generally touche[d] on matters related to his case, such as his relationship with his wife, raising money for family expenses, and his reaction to the development of his case and witnesses in it, including Stephen [sic] Mueller." Id. at 1. Counsel argued that these conversations were not only irrelevant but unduly prejudicial to movant's case. Id. at 2. Counsel made the strategic decision not to play the recordings beyond what the government was offering. Matters of trial strategy are virtually unreviewable in § 2255 post-conviction proceedings. United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006).

Even assuming movant's counsel should have insisted that all of the jailhouse phone recordings be played for the jury, movant cannot establish prejudice. At trial, movant's wife, Diana Kornhardt, testified. She was asked whether she remembered being told by one of movant's attorneys that as a condition of movant's bond, guns could not be in the house. Trial Trans. Doc. 319, p. 111. Mrs. Kornhardt responded: "Honestly that I don't recall because I removed all the guns from the house within two days of James's arrest on my own doing." Id. (emphasis added). When asked why she has removed all the guns, Mr. Kornhardt responded, "I removed the guns from the home because once Jim was arrested and it was publicized on the internet, news, newspaper that I lived in Dittmer, and I live in a rural area, my concern was I would be robbed due to the fact that I have to be gone during the day, the kids were going to be gone, so I removed jewelry, guns and any

cash from my house within two days of his arrest." Id. Mrs. Kornhardt also testified that she did not see Steve Mueller remove anything from the house. Playing for the jury all of movant's telephone conversations that he had in jail, including the one in which his wife told him that she wanted all of the guns out of the house, would have been repetitive, and movant cannot show that it would have changed the outcome of the trial. Moreover, playing the complete tapes might have caused more damage than good because movant's wife had testified that she believe she had already removed all the guns. Movant has not established that playing the complete jailhouse recordings would have altered the outcome of his trial. The claim is without merit.

### 20. Failure to Impeach Karen Coleman

Movant also claims in Ground Three that his trial counsel was ineffective for failing to impeach Karen Coleman "through cross-examining her with the telephone records and prison visitation logs which would have demonstrated the falsity about having received telephone calls from Larry Nolan, or, visits with him in prison when [movant] was alleged to have been present." Doc. 1 at 25.

Movant's argument fails because contrary to his assertion, defense counsel did cross-examine Karen Coleman about the lack of any corroborating documentation. As stated above, when movant's counsel cross-examined Karen Coleman, he established that, although she claimed to have mailed Larry Nolan numerous letters, she did not have one letter to corroborate her testimony. Tr. Tran. Vol. III-B, p. 61. In addition, although Karen Coleman testified she had called movant several times from her cell "bag" phone, she did not have one document from the phone company to show these phones calls were actually made. Id. at 62. Karen Coleman testified that she wrote movant's various phone numbers down in the back of one of her check registers.

Movant's counsel established during cross-examination that she kept every one of her check registers except for the one with the phones numbers, which would have corroborated her testimony. Id. at 88.

During closing argument, with respect to Karen Coleman's testimony, movant's counsel argued:

> And nothing interestingly enough can be corroborated, not one word of what she said. She talks about what? She talks about all these letters. Letters on top of letters on top of letters talking about the doctor. Conveniently burned. She talks about, well, I jotted down the numbers on the back of potentially a check register. Not there. She talked about this story where she and Michelle Nolan heard that a tape recording of her implicating her was buried over on Tennessee. Led the detectives to it. Not there. Talked about a cell phone. Not there. Visiting records. Nothing is corroborated.

Id. at 92. Movant's counsel clearly set out to undermine Karen Coleman's testimony by highlighting her inability to corroborate anything she said. To the extent movant is asserting that counsel did not do enough to impeach Karen Coleman, he does not state specifically what more his counsel should have done. Movant needs to provide more information to support his claim. The Court will not comb the record looking for instances when Ms. Coleman's testimony could have been impeached. As stated above, mere conclusory allegations are insufficient to support a claim for ineffective assistance of counsel. Bryson v. United States, 268 F.3d 560, 562 (8th Cir. 2001). Movant's claim fails because it does not assert with specifically how his counsel failed to impeach Ms. Coleman's testimony.

### 21.    Failure to Impeach Karen Coleman and Joe Briskey

In Ground Three movant further complains that his trial counsel was ineffective for failing to impeach "the trial testimony of Karen Coleman and Joe Briskey, with questions that would have

demonstrated that their respective testimony was based on recalling facts that they had read about in police reports, or were told to them by agents/officers, instead of memory of actual events they had witnessed." Doc. 1 at 25.

Again, the record does not support movant's assertion. Movant's trial counsel did challenge Karen Coleman and Joe Briskey vigorously. On a number of occasions he called attention to their inability to keep their stories straight, and he highlighted the many versions of their stories that they provided to law enforcement. The direct examination of Karen Coleman covers 19 pages of the trial transcript. Movant's cross-examination lasted several hours and covered over 125 pages of the trial transcript. The direct examination of Joe Briskey covered 17 pages of the trial transcript, and cross-examination by movant's counsel consists of 55 pages. Movant's counsel was able to establish with both witnesses that they had each met with the government's prosecutors or agents on many occasions to discuss this case and review their testimony, that their testimony kept changing with each meeting, and that their stories were not corroborated by any records. In his motion movant makes the conclusory statement that his trial counsel was ineffective in failing to impeach their testimony, but he offers no specifics as to what testimony should have been impeached, or what evidence, other than generic "police reports," his counsel should have used for impeachment. The Court finds that the cross-examination of these two witnesses was effective and thorough. Movant has not established that his counsel provided constitutionally infirm representation in this regard. Furthermore, movant has not explained to the Court how the outcome of his trial proceedings would have been different had his counsel cross-examined these two witnesses in some other manner. The claim is without merit.

## 22.     Failure to Impeach Agents and Officers

As an additional claim in Ground Three, movant states that his trial counsel was ineffective for failing to impeach the trial testimony of agents and officers "with questions designed to demonstrate to jurors that they had coached Karen Coleman, Joe Briskey, and Michael Kempker, about the necessity of testifying to specific facts, and that this was accomplished through a process of leading questions, or statements which included the desired response, and that each witness was allowed to infer, from those questions or statements, that it was in their respective penal interests to include in the trial testimony regardless of its truth or falsity (the officers and agents should have been impeached with failing to record the conferences with Karen Coleman, Joe Briskey, and Michael Kempker, as such recordings would have clearly revealed that they obstructed justice and subborned [sic] perjury by counseling or encouraging these witnesses to commit perjury at the trial)." Doc. 1at 25-6.

Again, movant's claim is not supported by the record. Contrary to movant's claim, his counsel did effectively cross-examine the case agent with questions designed to demonstrate that he had "coached" the witnesses. For example, movant's counsel established that Agent Heitzler had interviewed Karen Coleman on eight different occasions. Tr. Trans. Vol. IV, p. 181-82. As for Joe Briskey, cross-examination established the agent had talked to him on five occasions. Id. at 208-23. With respect to both witnesses, counsel established that their stories changed from meeting to meeting. In the Court's view, it is clear that the purpose of this trial tactic was at least in part to convey to the jury that the agent was trying to get the witnesses to change their stories to fit the prosecution's theory of the case. Movant also effectively cross-examined the agent regarding his meetings with Steven Mueller. Defense counsel elicited testimony from the agent that he told Mr.

43

Mueller to talk with his counsel in order to get his story straight. Id. at 202-203. A review of the trial transcript reveals that one of the defense theories of the case was that the government had manipulated witnesses to testify against movant. In other words, that these witnesses had been "coached."

Movant offers no specifics as to what more his counsel could have done, what specific testimony should have been impeached, or what evidence, other than generic "police reports," his counsel should have used for impeachment. The Court finds that the cross-examinations of the law enforcement officers were effective and thorough. Movant has not established that his counsel provided constitutionally infirm representation in this regard. Furthermore, movant has not explained to the Court how the outcome of his trial proceedings would have been different had his counsel cross-examined these two witnesses in some other manner. The claim is denied.

### 23.    Dismissal of Indictment

As further grounds for relief in Ground Three, movant asserts that his trial counsel was ineffective for failing to seek dismissal of the indictment "on the basis that the failure of the agents/officers to either record the conferences or sessions with Karen Coleman, Joe Briskey, and Michael Kempker, or, to prepare notes thereof, deprived [movant] of his only defense to the charge, i.e., that they were testifying falsely, and, effectively, denied him of his Sixth Amendment entitlement to be represented by counsel, because, without those notes or recordings,[movant] could not defend against the charge." Doc. 1 at 26.

Movant's counsel was not ineffective in failing to seek dismissal of the indictment on the ground that officers or agents failed to record or prepare notes of conferences with witnesses. The failure of an agent to record interviews is not the basis for a motion to dismiss an indictment, and

movant has cited no authority in support of his argument. Had defense counsel filed a motion to dismiss on this basis, the motion would have been denied. Movant, therefore, cannot show his counsel's performance was defective in this regard, or that he has suffered prejudice. The claim is without merit.

### 24.     Pretrial Ruling Regarding Admissibility of Karen Coleman's Testimony

Movant also faults his trial counsel in Ground Three for failing to move to exclude the testimony of Karen Coleman. Movant asserts in his motion that Ms. Coleman is unreliable for a number of reasons, including that she was "spoon fed" information by law enforcement and was motivated to lie in order to obtain a reduction in sentence. Doc. 1 at 27. He claims that his attorneys were ineffective for failing to seek a pretrial ruling excluding Karen Coleman's testimony. He asserts that Ms. Coleman was a "habitual liar who had difficulty distinguishing the truth from fiction; that she was a manipulative person who used others to her advantage, including Larry Nolan; that she was 'street smart' in the sense that she could sense the direction that others wanted her to go and react accordingly; that she experienced difficulty remembering events and facts due to the nervous breakdown she suffered following the murder of Danny Coleman; and that she possessed an incentive to testify falsely because a conviction of [movant] would result in a reduced sentence." Id. at 28.

Movant cannot show that his counsel's performance was deficient regarding the admission of Ms. Coleman's testimony. The issues movant raises with respect to Karen Coleman's testimony go to the weight given to her testimony, in other words her credibility, not to the admissibility of her testimony. The objections movant raises would not have been grounds to exclude Ms. Coleman's testimony. In other words, his counsel would not have succeeded on a motion to exclude Ms.

Coleman's testimony based on these grounds. That said, the issues movant raises do go to the witnesses's credibility, and movant's counsel raised these issues during his cross-examination of Ms. Coleman. See Tr. Trans. Vol. III-B, 27-153. Movant's claim that his counsel should have moved to exclude Ms. Coleman's testimony is without merit.

### 25. Confession of Steve Mueller

In Ground Three movant also asserts his counsel provided ineffective assistance of counsel because counsel did not "properly address the issue of allowing the confession of co-defendant Steve Mueller, to be introduced at the trial." Doc. 1 at 30-1. Movant contends that separate trials would have avoided the "unfair prejudiced suffered by James Kornhardt when jurors were allowed to hear the extra-judicial, unsworn, and uncross-examined, hearsay statements of co-defendant Steve Mueller." He argues this was in violation of Bruton v. United States, 391 U.S. 123 (1968).

Contrary to movant's assertion, his counsel did challenge the admissibility of Steve Mueller's statements a number of times. For example, defense counsel filed a motion to sever movant's case from his co-defendant's on the ground that the jury may hear evidence that implicated movant, even if the Court were to issue a limiting instruction warning the jury not to consider said evidence against movant. Movant's counsel argued that "because the statements of co-defendants are likely admissible against the codefendants in this case, but inadmissible with regard to [movant] due to hearsay, confrontation and due process concerns, severance of Defendant from his co-defendants is proper." United States v. Kornhardt, 4:08-CR-701 CAS, Doc. 88 at 6. Movant's counsel also filed a motion in limine to exclude hearsay statements, which included the admissibility of all of Steven Mueller's statements. Id., Doc. 236. Movant's counsel filed a motion for reconsideration of his motion in limine to exclude co-defendant admissions. Id., Doc. 243. Movant's

counsel raised this argument again on the first day of trial. Tr. Trans. Vol. 1, p. 4-6. And movant's

counsel repeatedly challenged the statements by raising objections during trial. <u>See</u>, <u>e.g.</u>, Tr. Trans.

Vol. II, p. 183. In his motion and supporting documents, movant does nothing to explain what more

his counsel should have done. Movant's claim that his counsel was ineffective for failing to object

to the admission of Steven Mueller's statements is without merit.

### 26. Failure to Request Jury Instruction

As an additional claim in Ground Three, movant claims his counsel was constitutional

ineffective because he failed to request the Court "to give a jury instruction informing jurors that

they could not base guilt simply due to James Kornhardt's failure to establish an 'alibi.'" Doc. 1 at

32.

At trial, the jury was given the following instructions:

[E]ach defendant is presumed to be innocent. Thus each defendant, even though
charged, begins the trial with no evidence against him. The presumption of
innocence alone is sufficient to find each defendant not guilty and can be overcome
only if the government proves, beyond a reasonable doubt, each essential element of
the crime charged. . . . There is no burden upon a defendant to prove that he is
innocent. Accordingly, the fact that a defendant did not testify must not be
considered by you in any way, or even discussed, in arriving at your verdict.

 <u>United States v. Kornhardt</u>, 4:08-CR-701 CAS, Doc. 258 at 14.

The jury will always bear in mind that the law never imposes upon a defendant in a
criminal case the burden or duty of calling any witnesses or producing any evidence,
and no adverse inference may be drawn from his failure to do so.

<u>Id.</u> at 46.

Movant did not testify at trial, and he did not present evidence of an alibi for the day of the

murder. But movant's counsel was not ineffective for failing to ask for an instruction informing

the jury that they may not base guilt on movant's failure to establish an alibi. Such an instruction

was not necessary and would not have changed the outcome of the trial because the jury was informed that movant need not prove that he was innocent, and that the burden rested entirely with the government.  The jury was also instructed that the fact the movant did not testimony must not be considered in any way.  In his motion, movant does not explain how specifically calling attention to the fact that he need not present alibi evidence would have changed the outcome of the trial.  In the Court's view, the more specific instruction was not necessary because the effect of movant's failure to testify or present evidence of an alibi was already addressed in the jury instructions.  Movant has not established that his counsel was ineffective for failing to request an alibi instruction or how the outcome of the proceedings would have been different.  <u>Strickland</u>, 466 U.S. at 697 (1984).  The claim is without merit.

### 27.     Absence of Communication Between Karen Coleman and Kornhardt

In Ground Three movant also asserts that his trial counsel provided ineffective representation by failing to reveal "the total absence of any communication occurring between Karen Coleman and James Kornhardt, after law enforcement authorities reactivated the closed case in the late 1990s." Doc. 1 at 32.    Movant argues that "the evidence established a termination of their alleged association in 1994. No witness testified concerning the occurrence of any contact, or communications between Karen Coleman and [movant] after 1994." <u>Id.</u>  Therefore, according to movant, "[i]t is contradictory and inconsistent for prosecutors to assert that the actions on Karen Coleman in 1998 were attributable to [movant] when the evidence established a termination of their alleged association in 1994." <u>Id.</u>

Movant's argument is internally inconsistent.  Movant faults his counsel for "failing to reveal" that there was no connection between himself and Ms. Coleman since 1994, while at the

same time he concedes that the evidence established that he and Ms. Coleman had terminated their alleged association in 1994. As movant admits, there was no evidence before the jury about any contact or communication between Karen Coleman and movant after 1994. Perhaps movant means to argue that his counsel was ineffective for failing to highlight to the jury that there was no communication between movant and Ms. Coleman after 1994, and that his counsel should have stressed this more in cross examinations and his closing argument. The Court declines to find constitutionally deficient performance on this basis. The Court finds this was a matter of trial strategy, which is virtually unreviewable in § 2255 post-conviction proceedings. United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006).

But even assuming movant's counsel should have emphasized during cross-examinations and closing argument that there was no communication between Karen Coleman and movant after 1994, movant cannot establish prejudice. As movant admits, the jury was presented with evidence showing that the last communication between movant and Ms. Coleman was in 1994. But in light of the strong evidence of movant's guilt, the jury decided to convict. United States v. Kornhardt, 661 F.3d at 350-5. Movant has not established that the outcome of his criminal proceedings would have been different had movant's counsel spent more time highlighting the lack of communication between movant and Ms. Coleman. The claim is without merit.

### 28. Motion to Dismiss Based on Expiration of Limitations Period

Movant makes the following argument in Ground Three:

Defense attorney did not properly present arguments in support of dismissing the indictment based on expiration of the limitations period. The alleged conduct of James Kornhardt occurred outside the limitations period. Jurors only found him guilty based on acts which occurred outside of the five-year statute of limitations. Jurors were never requested to make a finding as to when [movant]'s acts were completed. Defense attorneys did not make an argument based on the legal principle

49

that time limitations begin "to run on the date the offense is first committed." <u>United States v. Hook</u>, 781 F.2d 1166 (6th Cir. 1985). Proper argument and legal research would have resulted in a dismissal of the charges.

Doc. 1 at 34.

Again, movant's account of his counsel's action is inaccurate. Contrary to movant's assertions, movant's counsel did file a motion to dismiss based on the expiration of the statute of limitations. <u>United States v. Kornhardt</u>, 4:08-CR-701 CAS, Doc. 95. Indeed, his counsel argued that movant's alleged conduct occurred outside the limitations period. Movant's claim in this regard is without merit.

### 29. Fingerprint Analysis

Movant also claims in Ground Three that his trial counsel was ineffective for failing to challenge the admissibility of the government's fingerprint expert. Movant asserts that at the time of his trial, the science behind fingerprint analysis was being disputed. He argues that fingerprint identification based on latent fingerprint analysis fails to meet the <u>Daubert</u> criteria, and he argues his counsel should have objected to the fingerprint evidence on this basis. Doc. 1 at 34.

Again, the record is inconsistent with movant's claim. Movant's trial counsel did file a motion in limine to exclude latent fingerprint testimony based on this very argument. <u>United States v. Kornhardt</u>, 4:08-CR-701 CAS, Doc. 231. Movant's trial counsel requested that the Court exclude the testimony of all forensic fingerprint examiners the government intended to call, to hold a hearing on counsel's motion, and to apply the principles from <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) to exclude all testimony from such witnesses "because latent fingerprint analysis, and specifically the latent fingerprint analysis utilized in this case, does not meet <u>Daubert's</u> standard for admissible expert testimony." <u>Id.</u> at 1. The undersigned heard arguments on counsel's

motion prior to trial, and overruled the motion. Tr. Trans. Vol. 1, p. 3. Defense counsel then renewed his objections to the testimony during the trial. See, e.g., Tr. Trans. Vol. II, p. 171. As movant's counsel engaged in the very conduct movant argues he should have with regard to the fingerprint evidence, movant has not established that his counsel's performance was deficient. The claim is without merit.

### 30. Prosecutor's Closing Argument

Movant further claims in Ground Three that his counsel was ineffective for failing to object to and to request a mistrial when the prosecutor argued during his closing argument that Danny Coleman was killed due to a bullet wound. Movant claims that this was in direct contradiction to the evidence, including the government's own expert. In his motion, movant states:

> Thus, the prosecutor was encouraging jurors to ignore the evidence and find that Danny Coleman was killed by a gunshot wound because, otherwise, [movant]'s recorded telephone call to his wife, from the jail, would demonstrate the falsity of the government's theory and make fools of the agents and prosecutors. Great reliance was placed on James Kornhardt's aforesaid telephone call for purposes of establishing his culpability. It constituted the single piece of direct evidence wherein prosecutors could contend that he was expressing his consciousness of guilt. Without some proof that Danny Coleman died from a gunshot wound, then the government's case would have collapsed. Thus, prosecutors were forced to continue arguing, in contradiction of their own proof, that Danny Coleman was shot, and that the murder weapon was stored in James Kornhardt's house. This was total nonsense, and defense counsel failed to protect his client by allowing the prosecutor to make the argument.

Doc. 1 at 34.

The Court has review the trial transcript, and finds that the transcript does not support movant's argument. The prosecutor stated during closing arguments that Danny Coleman was beaten to death with bats, and "a fighting stick of some sort," and then he was shot over the left eye

and in his chest. Tr. Trans Vo. VI, p. 67-8. The government's attorney did not argue that Danny Coleman was killed by a bullet.

Moreover, the prosecutor's statement that Danny Coleman was shot in the head and chest was not inconsistent with the forensic evidence. Dr. Mary Case, a pathologist who testified at trial for the government, testified that the left side of the victim's head was missing from the side to the back. Tr. Trans. Vol. V, p. 31-34. She stated that something disrupted the brain but she could not say what it was. Id. at 38. She noted that an x-ray revealed that there were multiple small fragments that were opaque, which could be metal. She could not tell with certainty whether it was related to a gunshot wound. She stated that the image was consistent with a gunshot wound but she could not say definitively. Id. at 28-45. With respect to the victim's body, evidence established that approximately 100 pounds of the victim's body was missing. In particular, Dr. Case testified that ribs were missing, much of the chest wall was missing, and skin, soft tissue, muscle and much of the bone were missing. She testified that she would not be able to determine if a bullet traveled through any of the missing body area. Id. at 39-45.

Defense counsel also called their own pathologist, Dr. Edward Edelstein, to testify at trial. On cross-examination, Dr. Edelstein agreed that the left side of the skull was missing and part of the ribs and chest tissue were missing and, therefore, it would be pure speculation to say what could have happened to or what type of trauma may have occurred in those areas. Tr. Trans. Vol. V, p. 80-81.

The Court finds the prosecutor's closing argument was not improper. Contrary to movant's assertion, the testimony from two pathologists was not inconsistent with the argument the government made in closing that Mr. Coleman was shot in the head and chest after being beaten.

Both doctors testified that large parts of the victim's body were missing – parts of his head and skull – therefore, they could not determine whether the victim had been shot in those two areas. Defense counsel was not ineffective for failing to object to the government's closing argument, because statements regarding Danny Coleman being shot in the head and chest were not inconsistent with the evidence at trial, and any such motion would have been denied. The claim is without merit.

### 31. Failure to Seek Statute of Limitations Instruction

Movant also argues in Ground Three that his counsel was ineffective for not requesting a jury instruction directing that the jury determine the statute of limitations. "The court gave a directed verdict to the government on this issue by not submitting it to the jury, i.e., whether the indictment was returned within five years of any criminal act by James Kornhardt, which violated 18 U.S.C. § 1958, that was in effect at the time of Danny Coleman's death." Doc. 1 at 36. Thus, movant argues, his counsel was ineffective for failing to request jury instructions directing jurors to determine if movant's alleged conduct occurred prior to 1994. Id. at 37.

Movant's counsel was not ineffective for failing to request a jury instruction allowing the jury to decide the statute of limitations issue. The issues surrounding the statute of limitations in this case presented legal questions that were decided by the Court following movant's counsel's motion to dismiss the indictment on these grounds. There were no issues of fact for the jury to determine with regard to the statute of limitations, and movant has pointed to none. Therefore, movant's counsel did not engage in constitutionally infirm representation when he did not request a jury instruction with regard to the statute of limitations. Movant's counsel waited until after trial and appealed to the Eighth Circuit Court of Appeals this Court's legal rulings as to the statute of

limitations. As counsel's performance was not constitutionally infirm, movant necessarily cannot establish that he was prejudiced by counsel's performance. Movant's claim is without merit.

### 32.    Validity of the Indictment

As an additional claim in Ground Three, movant contends that his trial counsel was ineffective when he failed to challenge the validity of the indictment. According to movant, a grand jury convened in 1999 in this case and refused to return a "True Bill." Doc. 1 at 38. Movant notes in his motion that another grand jury convened in 2008, and the grand jury returned an indictment. Movant then supposes, "[i]n order to justify a second referral, additional evidence must be introduced to the second grand jury that was not available to the first grand jury." Doc. 1 at 38. Movant faults his counsel for failing to discover "what, if any, constituted the additional proof" was presented to the second grand jury. Id. Movant then theorizes that had counsel done so, it would have been revealed that law enforcement had no additional evidence linking movant to the murder of Danny Coleman that they did not have in 1999, and the indictment would have been dismissed as invalid. Id.

Movant's claim amounts to nothing more than pure speculation. He points to no evidence in support of his theory that there was no additional evidence presented to the grand jury in 2008. According to the government, the foundation for movant's claim is in error. The government states in its response that a grand jury did convene in 1999 for the purpose of putting testimony of Michael Kempker before the grand jury, however, the grand jury was not asked to return a "True Bill" at that time.

Furthermore, movant provides no authority for his argument that the indictment was invalid because the same evidence was presented to an earlier grand jury with no indictment. As there is

no factual or authoritative basis to support movant's claim that his counsel was ineffective for failing to challenge the indictment based on the grand jury process, movant's claim is denied without merit.

### 33. **Lafler** and **Frye**

Movant further asserts in Ground Three that he was denied the benefit of plea negotiations. In one paragraph, movant states "The recent Supreme Court opinions of <u>Missouri v. Frye</u>, and <u>Lafler v. Cooper</u>, have elevated plea bargaining to the Constitutional level by now requiring defense attorneys to engage in a plea bargaining session with federal prosecutors. [Movant] was denied the benefit of plea negotiations, in violation of his Six Amendment entitlement to the effective assistance of counsel." Doc. 1 at 38.

In <u>Missouri v. Frye</u>, 132 S.Ct. 1399 (2012), the Supreme Court held that defense counsel was deficient, as an element of a claim of ineffective assistance of counsel, in failing to communicate to defendant the written plea offers from the prosecutor, which included terms and conditions that may be favorable to the accused. In <u>Lafler v. Cooper</u>, 132 S.Ct. 1376 (2012), the Supreme Court held that the petitioner was prejudiced by his counsel's deficient performance in advising petitioner to reject a plea offer and proceed to trial. In order to establish a claim of ineffective assistance based on attorney conduct during plea negotiations, the petitioner must show "but for the ineffective advice of counsel there is a reasonable probability . . . that the defendant would have accepted the plea . . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." <u>Lafler</u>, 132 S.Ct. at 1385.

Movant does nothing to explain how his attorney erred during the plea negotiations – or even whether there were plea negotiations. He also fails to establish how the results of the proceeding

would have been different – in other words, that a plea agreement was offered, that he would have accepted its terms, and that his conviction or sentence would have been less severe. This claim is denied as conclusory and not supported by the record.

### 34. Failure to Seek Hearing

Movant also contends in Ground Three that he received ineffective assistance of trial counsel because his attorneys failed to demand a hearing on whether law enforcement authorities prepared or took notes of their interviews with Karen Coleman, Steve Mueller, Michelle Nolan, Michael Kempker and Joe Briskey. Doc. 1 at 39.

As the government notes, movant's counsel filed many pretrial motions on his behalf. One of those motions was a motion to preserve and produce any rough notes maintained by the agents in this case. United States v. Kornhardt, 4:08-CR-701 CAS, Doc. 91. At the August 28, 2009, evidentiary hearing before the Honorable David D. Noce, United States Magistrate Judge, counsel for the government responded that the government had already instructed its investigators and agents to preserve investigatory materials. The Magistrate Judge, therefore, denied the motions without prejudice as moot. United States v. Kornhardt, 4:08-CR-701 CAS, Doc. 157 at 17-18.

Movant's counsel protected movant's rights with respect any notes maintained by the agents in this case by filing a motion to preserve and produce the agents' notes. The record does not support movant's contention that his counsel was ineffective in failing to demand an evidentiary hearing regarding the agents' notes. Furthermore, movant cannot establish prejudice. There is nothing in the record to suggest that movant did not receive all the evidence to which he was entitled. There is no evidence in the record of notes from agents that were not produced. Movant has not shown he is entitled to relief, and his claim is denied.

### 35. Closing Argument Regarding Steven Mueller's Confession

Finally, in Ground Three movant claims his trial counsel was constitutionally ineffective in that he failed to object to the prosecutor's closing argument when the prosecutor directed the jurors' attention to the confession and extra-judicial statements made by Steven Mueller, which were supposed to be admitted into evidence against Steven Mueller only. "[T]he prosecutor disregarded the court's cautionary instruction on this issue by directing the jury's attention to Steve Mueller's aforesaid confession and statements and asking them to find [movant] guilty based on Steve Mueller's said confession and extra-judicial statements, all without objection from the defense attorneys." Doc. 1 at 40.

Again, movant is mistaken as to the record in this case. Movant's counsel did object to the use of Steven Mueller's confession and extra-judicial statements. After the prosecutor completed the first half of his closing argument, movant's counsel approached the Court and stated, "We want to renew our motion under the various motions we filed pursuant to Bruton and Crawford. It is our position that [the prosecutor], although most likely inadvertently, again mentioned Kornhardt in the context of not an individual, Mr. Kornhardt." Tr. Trans. Vol. VI, p. 71. The Court overruled the objection. Id. at 72.

Movant fails to establish that his counsel was ineffective because his counsel did object to the prosecutor referring to Steven Mueller's testimony during closing arguments. Movant's claim is denied.

### D. Ground Four - Ineffective Assistance of Appellate Counsel

Movant is also dissatisfied with this appellate counsel. In Ground Four he raises six claims of ineffective assistance of appellate counsel.

To establish ineffective assistance of appellate counsel, movant must show that his appellate counsel's performance was deficient, and prejudice from that deficiency. The Eighth Circuit has stated that "the deficient performance standard is rigorous" for a claim of ineffective assistance of appellate counsel. United States v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008). A court's review "is particularly deferential when reviewing a claim that appellate counsel failed to raise an additional issue on direct appeal." Charboneau v. United States, 702 F.3d 1132, 1136 (8th Cir. 2013). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal." Jones v. Barnes, 463 U.S. 745, 751 (1983). The Eighth Circuit has stated, "[t]he Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal," New v. United States, 652 F.3d 949, 953 (8th Cir. 2011), and when "appellate counsel has 'competently assert[ed] some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims.'" Gray v. Norman, 739 F.3d 1113, 1117-18 (8th Cir. 2014) (quoting Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006)). According to the Eighth Circuit, it is difficult to overcome Strickland's presumption of reasonableness unless the "ignored issues are clearly stronger than those presented." Walker v. United States, 810 F.3d 568, 579 (8th Cir. 2016) (quoting Gray, 739 F.3d at 1118). Moreover, "[t]he prejudice standard is equally rigorous." Brown, 528 F.3d at 1033. A movant "must show that 'the result of the proceeding would have been different' had he raised [the issue] on appeal." Id. (quoting Becht v. United States, 403 F.3d 541, 546 (8th Cir. 2005)).

### 1. Fingerprint Evidence

In Ground Four movant argues that his appellate counsel was ineffective for failing to raise the issue of fingerprint evidence on appeal. Movant states, "fingerprint testimony was incompetent, and not in accordance with Supreme Court opinions addressing expert testimony." Doc. 1 at 41. Movant provides no further elaboration or citations in support of his claim. He does not explain in what way the fingerprint testimony was incompetent or identify to which Supreme Court opinion he is referring. Movant's claim is conclusory and accordingly, it does not warrant relief. Bryson v. United States, 268 F.3d 560, 562 (8th Cir. 2001).

That said, the Eighth Circuit has found that fingerprint evidence and analysis is generally accepted. See United States v. Ibarra, 397 Fed.Appx. 285 (8th Cir. 2010) (noting fingerprint evidence is generally accepted and finding fingerprint expert was qualified to testify); United States v. Spotted Elk, 548 F.3d 641, 663 (8th Cir. 2008) (holding Daubert hearing was unnecessary for admission of fingerprint expert); United States v. Janis, 387 F.3d 682 (8th Cir. 2004) (same); United States v. Collins, 340 F.3d 672, 682 (8th Cir. 2003) (holding district court did not err in declining to conduct a Daubert hearing prior to admitting fingerprint evidence). There is no reason to believe the Eighth Circuit would have granted an appeal based on a challenge to the admissibility of fingerprint evidence. Movant's counsel raised a number of issues on appeal, and movant has done nothing to show that the fingerprint issue was stronger. Walker, 810 F.3d at 579. The Court, therefore, must presume it was appellate strategy to exclude from movant's appeal a claim challenging fingerprint evidence – a science which is widely accepted. Id.; Spotted Elk, 548 F.3d at 663. Movant's claim is without merit.

### 2.     Speedy Trial

In Ground Four movant asserts that his appellate counsel was ineffective for failing to raise the issue on appeal that he was denied a speedy trial. In support of this claim, movant cites no controlling authority and he does not refer to the record. Movant's claim, therefore, is conclusory and does not warrant relief. Bryson, 268 F.3d 560, 562 (8th Cir. 2001). But even if the Court were to address the claim, it is without merit.

Movant was indicted on the original charges on December 11, 2008, and made his initial appearance the next day. At his arraignment on December 17, 2008, he filed a motion for additional time in which to file pre-trial motions. United States v. Kornhardt, 4:08-CR-701 CAS, Doc. 31. Trial was scheduled for March 2, 2009. Id. In January 2009, the parties requested a continuance of the trial setting. The Court issued a Speedy Trial Order, in which it granted the parties' request for continuance, reset the trial for July 6, 2009, and found that any elapsed time was excludable under the Speedy Trial Act. Id., Doc. 42. In April 2009, a superseding indictment was returned against movant by the grand jury. Id., Doc. 64. Movant was arraigned on the superseding indictment. On June 5, 2009, movant filed numerous pretrial motions with the Magistrate Court. Id., Docs. 85-91. On June 9, 2009, the parties again filed a joint motion to continue the trial date. This Court granted the motion and set the case for a status hearing on August 4, 2009. The Court also issued a Speedy Trial Order declaring all elapsed time excludable under the Speedy Trial Act. Id., Doc. 97. A second superseding indictment was returned on June 25, 2009. Id., Doc. 105. The Court held a status conference on August 4, 2009, and determined with input and approval of all parties that the case would be tried on March 1, 2010. Id., Docs. 111 and 131. Several pretrial motions were filed between August 2009 and January 7, 2010, during which time motions were filed, hearings were

held, transcripts were obtained. In January 2010, the Magistrate Judge completed ruling on all pretrial motions. Defense counsel filed motions for reconsideration of the Magistrate Judge's rulings two weeks later. Those motions were under advisement until February 5, 2010. Id., Doc. 177. Five days later, movant filed objections to the Magistrate Judge's Report and Recommendation. Id., Doc. 182. On February 18, 2010, movant filed yet another request for continuance of the trial setting. Id., Doc. 184. The Court granted that motion the next day, resetting the case for trial on May 10, 2010, and issuing a speedy trial order declaring all elapsed time to be excludable. Id., Doc. 185. The Court granted another request for trial continuance by movant on March 15, 2010, resetting the trial for June 7, 2010. Id., Doc. 193. The case proceeding to trial on that date.

Sixth Amendment and Speedy Trial Act challenges for delay "are reviewed independently of one another. United States v. Sprouts, 282 F.3d 1037, 1041 (8th Cir. 2002). "The Speedy Trial Act requires that a defendant be brought to trial within 70 days from the date of indictment or from the date he makes his first appearance before an officer of the court in which the charge is pending, whichever is later. 18 U.S.C. § 3161(c)(1); Sprouts, 282 F.3d at 1042. "When a newly indicted defendant 'is joined with a defendant whose speedy trial clock has already started running, the latter defendant's speedy trial clock will be reset' to that of the new defendant. United States v. Lightfoot, 483 F.3d 876, 885-86 (8th Cir.), cert. denied, 552 U.S. 1053 (2007); see 18 U.S.C. § 3161(h)(6)." United States v. Porchay, 651 F.3d 930, 937 (8th Cir. 2011). Periods of delay caused by pretrial motions, whether filed by the defendant, co-defendants, or the prosecution, are excluded from the calculation of this 70-day time frame, 18 U.S.C. § 3161(h)(1)(F); United States v. Fuller, 942 F.2d 454, 457 (8th Cir. 1991), cert. denied, 502 U.S. 914 (1991); as are continuances granted by the court

in order to best serve 'the ends of justice,' § 3161(h)(8)(A)." United States v. Shepard, 462 F.3d 847, 864 (8th Cir. 2006).

Movant and his co-defendant filed numerous pretrial motions, and they requested extensions and continuances on several occasions. Appellate counsel was not ineffective for not raising a speedy trial violation because the Eighth Circuit would have rejected such a claim without merit. But even if movant had a colorable claim for a speedy trial violation, movant's counsel was not constitutionally ineffective for failing to raise it. The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal. Delo, 160 F.3d at 418. Although movant maintains his appeal counsel should have raised the speedy trial issue on appeal, "[he] neither compares the strength of that claim to those appeal issues [his] counsel asserted nor otherwise casts doubt on [his] counsel's strategic decision not to raise it." Walker, 810 F.3d at 579. Without evidence to the contrary, the Court is to presume that counsel's decision not to argue that there was a speedy trial violation "was an exercise of sound appellate strategy." Id. Movant's claim is without merit.

### 3.     Indictment Failed to Allege an Offense

Movant further asserts in Ground Four that his appellate counsel was ineffective because he failed to argue on appeal that "the indictment failed to allege an offense." Doc. 1 at 41. Movant offers no further explanation and does not state in what way the indictment failed to allege an offense. Like so many of the grounds movant raises in his motion, this claim is conclusory and, therefore, it does not warrant relief. Bryson, 268 F.3d 560, 562 (8th Cir. 2001). Furthermore, as stated above in Ground One, the indictment does allege and movant was convicted of an offense under 18 U.S.C. § 1958. If there is no merit to a claim, failure to raise it on appeal does not result

in ineffective assistance of counsel under <u>Strickland</u>.  <u>Garrett v. United States</u>, 78 F.3d 1296, 1305 (8th Cir. 1996).  This claim is denied without merit.

### 4.        Sufficiency of Evidence

As an additional claim in Ground Four, movant argues that his appellate counsel should have argued that on appeal that "the evidence did not support a conviction for mail fraud and/or murder-for-hire (18 U.S.C. § 1958)."  Doc. 1 at 41.  Once again, movant offer no further explanation, and the claim should be dismissed as conclusory.  <u>Bryson</u>, 268 F.3d at 562. But regardless, the claim fails.

Setting aside the fact that movant has done nothing to show that a sufficiency of the evidence argument would have been stronger than the arguments that were raised on appeal, the record demonstrates that there was more than sufficient evidence to support movant's conviction, and any such argument movant's appellate counsel might have made in this regard would have been rejected.  There was very good reason for movant's appellate attorney to omit a challenge to the sufficiency of the evidence.  An appellant challenging the sufficiency of the evidence supporting his convictions faces a very high bar.  "The Eighth Circuit employs an 'extremely strict standard of review' in determining sufficiency of the evidence to support a guilty verdict.  <u>United States v. Winston</u>, 456 F.3d 861, 866 (8th Cir. 2006).  In reviewing for sufficiency of the evidence, the Eighth Circuit views the evidence in the light most favorable to the government, and accepts all reasonable inferences drawn from the evidence that support the jury's verdict.  <u>Id.</u>  A conviction will be overturned only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.  <u>United States v. Bell</u>, 477 F.3d 607, 613 (8th Cir. 2007) (cited case omitted).  Movant provides no analysis as to how his appellate counsel would have been successful had he asserted such a claim.

Furthermore, as the government points out, the Eighth Circuit nonetheless considered the strength of the government's case when it determined that the admission at trial of Steve Mueller's grand jury testimony was harmless error, if error at all. The Eighth Circuit specifically noted in its opinion:

> As to the murder-for-hire and conspiracy to commit murder-for-hire charges, the evidence against Kornhardt was overwhelming. Karen testified about Kornhardt's involvement in Danny's murder, including the discussions before Danny's death and the payments received after Danny's death. Kempker also testified about Kornhardt's involvement before Danny's death. There was also the recorded phone conversation where Kornhardt told Mueller to immediately remove several hidden items from the house shortly after Kornhardt was arrested for Danny's death…. Similarly, Kornhardt's recorded statements to his brother where he "[s]aid it doesn't look good for me" support the jury's verdict as well…. Finally, the presence of Kornhardt's fingerprint on the new box of matches found near Danny's burned body is a particularly strong piece of evidence.

> United States v. Kornhardt, 661 F.3d at 350.

And the Eighth Circuit wrote with respect to the obstruction of justice charge:

> With regard to the obstruction of justice charge, the other evidence clearly establishes beyond a reasonable doubt that any error in admitting Mueller's grand jury statements was also harmless. Shortly after being arrested for Danny's death, Kornhardt called Mueller. During the phone conversation, which the jury properly heard, Kornhardt ordered Mueller to immediately remove several items that were hidden throughout his house and detached garage. Kornhardt's wife initially answered the phone and remained in the house during the phone conversation. She identified Kornhardt and Mueller as the speakers in the recorded conversation. She also testified that she expected the police to search the house. The recorded phone conversation significantly reduced the importance of Mueller's grand jury testimony because Mueller's grand jury testimony was largely cumulative of the phone conversation. When viewed collectively, the other evidence against Kornhardt as to the obstruction of justice was strong.

Kornhardt, 661 F.3d at 350. In light of these conclusions, the Court is confident that even if movant's appellate counsel had raised an argument regarding the sufficiency of the evidence at trial,

any such argument would have been denied on appeal. Accordingly, movant cannot establish prejudice. Strickland, 466 U.S. at 697 (1984). Movant's claim is without merit.

### 5.     Introduction of Steven Mueller's Testimony

Movant also claims in Ground Four that he was denied a fair trial when co-defendant Steve Mueller's confession was introduced. Movant assert that his appellate counsel should have argued this on appeal. This argument, however, was raised by movant's appellate counsel on appeal, and the Eighth Circuit rejected the argument. United States v. Kornhardt, 661 F.3d at 348-351. Movant's claim is without merit.

### 6.     Failure to Seek a Rehearing in the Court of Appeals

Finally, in Ground Four movant argues that his appellate counsel was ineffective for "allow[ing] to go uncorrected the appeals panel finding that [movant]'s 'Obstruction of Justice' charge was based on a telephone conversation with Steve Mueller." Doc. 1 at 41. Again, movant provides no further explanation or analysis in support of his claim and it should be denied as conclusory. Bryson, 268 F.3d at 562

That said, in order to "correct" a Court of Appeals decision, movant's appellate counsel would need to have filed a motion for rehearing, or, a petition for writ of certiorari with the Supreme Court, both of which are discretionary. "Due process guarantees a criminal defendant a constitutional right to counsel for [his] first appeal, Douglas v. California, 372 U.S. 353, 357-58 (1963), and that right encompasses the right to effective assistance of counsel, Evitts v. Lucey, 469 U.S. 387, 396-400 (1985)." Steele v. United States, 518 F.3d 986, 988 (8th Cir. 2008) (parallel citations omitted). The Eighth Circuit has explained, however, that due process does not guarantee a constitutional right to counsel for a litigant seeking to file a certiorari petition in the United States

Supreme Court.  Steele, 518 F.3d at 988 (citing Ross v. Moffitt, 417 U.S. 600,  617-18 (1974); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.")); see also 28 U.S.C. § 1254 (writ of certiorari is discretionary). "[W]here there is no constitutional right to counsel there can be no deprivation of effective assistance."  Simpson v. Norris, 490 F.3d 1029, 1033 (8th Cir. 2007).   In the absence of a constitutional right to the effective assistance of counsel, movant's § 2255 claim for ineffective assistance for failure to file a petition for certiorari or move for a rehearing en banc is denied.  See Steele, 518 F.3d at 988.

### E.    Ground Five - Due Process Insufficient Evidence

In Ground Five movant argues that he was denied due process of law when he was convicted of an offense "not supported by the proof."  More specifically, movant argues that he was convicted of obstructing justice on the basis that he directed Steven Mueller to destroy the firearm that was used to kill Danny Coleman, but that the government failed to produce admissible evidence that the victim was killed by a firearm, let alone a firearm with a silencer.

Movant failed to raise this issue in his direct appeal.   If a claim could have been raised on direct appeal but was not, it cannot be raised in a § 2255 motion.  As stated above, movant can overcome a procedural default under two circumstances.  The first method is to  show "cause" that excuses the default, and  "actual prejudice" resulting from the errors of which he complains.  See Frady, 456 U.S. at 168; Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997), cert. denied, 522 U.S. 1064 (1998).  If a movant is unable to show "cause" and "actual prejudice," he must make a "substantial claim that constitutional error has caused the conviction of an innocent person . . . ." Schlup v. Delo, 513 U.S. 298, 321 (1995).  In one sentence, movant states that the issue in Ground

Five was not raised on direct appeal "due to the ineffective assistance of appellate counsel, plus, [movant] is 'actually innocent' of the charges."  Doc. 1 at 43.

The Court will address movant's claim of actual innocence first.  Claims of actual innocence must be based on "new evidence," which must convince the Court that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Schlup v. Delo, 513 U.S. 298, 327 (1995).  See also Embrey v. Hershberger, 131 F.3d 739, 741 (8th Cir. 1997) (applying Schlup's actual innocence standard in the context of a § 2255 motion). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence– whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence– that was not presented at trial."  Schlup, 513 U.S. at 324.  "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  Id. Movant only makes the conclusory claim that he is actually innocent of the crime for which he was convicted.  He fails to present any new evidence for the Court's consideration. Movant's unsupported assertion that such evidence exists is insufficient to establish a showing of actual innocence based on new evidence.  See Schlup, 513 U.S. at 324.

As for "cause" to lift the procedural bar, ineffective assistance of counsel in failing to raise a claim on appeal can amount to cause to lift a procedural bar.  Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005).  The deficient performance, however, must have been so ineffective as to violate the Constitution.  Murray v. Carrier, 477 U.S. 478, 488-89 (1986). The Court has already determined in Ground Four that movant's appellate counsel was not ineffective for failing to raise a sufficiency of the evidence argument on direct appeal.  The Court also noted that even if the claim had been raised, it would have failed because the Eighth Circuit essentially decided this issue and concluded

that the evidence against movant on the obstruction-of-justice charge was strong on this charge. United States v.Kornhardt, 661 F.3d at 350. Because movant has failed to establish either cause and prejudice or actual innocence, his due process insufficient evidence claim is dismissed as procedurally barred.

### F. Ground Six - Admission of Statement by Steven Mueller

For his final ground for relief, movant argues in Ground Six that he was denied a fundamentally fair trial when the Court allowed jurors to hear Steven Mueller's unsworn, extra-judicial statements.

Movant raised the admission of Steven Mueller's statements on direct appeal and, therefore, he is precluded from asserting it again in his § 2255 motion. See Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003); Dall v. United States, 957 F.2d 571, 572 (8th Cir. 1992). "[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." Davis v. United States, 673 F.3d 849, 852 (8th Cir. 2012) (quoting Bear Stops, 339 F.3d at 780). Furthermore, the Court of Appeals found the argument to be without merit. Kornhardt, 661 F.3d at 349. As movant has already presented this issue to the Eighth Circuit Court of Appeals, he is procedurally barred from re-litigating the claim again here. The claim is denied.

## V. Conclusion

For all the reasons stated above, the Court finds that James K. Kornhardt is not entitled to relief under 28 U.S.C. § 2255. The Court finds that all the claims in movant's Motion to Vacate have been raised on direct appeal, are procedurally barred, or fail on the merits.

Accordingly,

**IT IS HEREBY ORDERED** that movant James K. Kornhardt's motions to supplement the record are **GRANTED.** (Docs. 21 and 25)

**IT IS FURTHER ORDERED** that movant James K. Kornhardt's motion for evidentiary hearing is **DENIED.** (Doc. 26)

**IT IS FURTHER ORDERED** that movant James K. Kornhardt's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody is **DENIED.**

**IT IS FURTHER ORDERED** that movant James K. Kornhardt has not made a substantial showing of the denial of a constitutional right such that reasonable jurists would find the Court's assessment of the constitutional claims debatable, or that reasonable jurists would find it debatable whether the Court was correct in its procedural rulings and, therefore, this Court will not issue a certificate of appealability on those claims. See Miller-El v. Cockrell, 537 U.S. 332, 338 (2003); Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

An appropriate judgment will accompany this Memorandum and Order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**



Dated this ___9th___ day of March, 2016.